704 So.2d 264 (1997)
CITY OF JENNINGS, Plaintiff-1st Appellant,
v.
David DEQUEANT, Defendant-2nd Appellant.
No. 96-943.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1997.
Rehearing Denied February 6, 1998.
*266 Christopher R. Philipp, Lafayette, for City of Jennings,
Michael Benny Miller, Crowley, for David Dequeant.
Before YELVERTON, THIBODEAUX, COOKS, WOODARD and DECUIR, JJ.
DECUIR, Judge.
The City of Jennings (Jennings) appeals a judgment rendered by the Office of Workers' Compensation awarding David Dequeant supplemental earnings benefits (SEB) based on zero earnings. Jennings also appeals that portion of the judgment ordering it to pay Dequeant $2,000.00 in damages and $6,000.00 in attorney's fees for releasing his confidential medical records to a registered nurse and rehabilitation counselor without his consent in violation of La.R.S. 23:1127.
Dequeant answers the appeal and also complains the workers' compensation judge erred in failing to award him additional penalties and attorney's fees for Jennings' arbitrary and capricious reduction of his weekly compensation benefits. For the following reasons, we reverse the judgment.

FACTS
David Dequeant was employed by Jennings as a water plant operator. On July 17, 1993, Dequeant injured his back on the job. As a result, Jennings paid temporary total disability (TTD) benefits to Dequeant at the rate of $212.87 per week. On July 31, 1993, Dequeant authorized Jennings' workers' compensation insurer or its representatives to obtain his medical records. On September 22, 1993, Dr. Ricardo Leoni, a neurosurgeon, performed a microdiscectomy at the L3-4 level. After the surgery, Dequeant continued to complain of pain. Dr. Leoni referred Dequeant to Dr. James Domingue, a neurologist. Dr. Leoni also recommended that Dequeant see Dr. Robert Franklin, a specialist in physical medicine and rehabilitation. Jennings' insurer retained Mark Cheairs (a vocational rehabilitation expert) and Andrea Douglass (a registered nurse) to assist in securing vocational rehabilitation and medical treatment for Dequeant. The insurer provided Cheairs and Douglass with copies of Dequeant's medical records.
In a letter dated April 21, 1994, Cheairs contacted Dequeant's attorney, requesting permission to conduct an initial vocational evaluation of Dequeant. Dequeant's attorney inquired about Cheairs' qualification as a facilitator and requested Cheairs provide him "medical information" indicating that rehabilitation was proper. Dequeant's attorney also drafted an "Agreement to Provide Rehabilitation Services" requesting that Cheairs sign and return it before meeting with Dequeant. Cheairs, having been engaged by Jennings to provide the service, refused to sign the agreement. As a consequence, Cheairs and Dequeant did not meet. On July 12, 1994, Dequeant suffered a cerebral stroke unrelated to his employment injury. This stroke caused Dequeant to become totally disabled.
On July 20, 1994, Jennings filed a motion to compel Dequeant to submit to vocational rehabilitation. In response, Dequeant filed a motion and order for damages and attorney's fees alleging Jennings released his medical records to third persons without his consent. Thereafter, Jennings filed a supplemental and amending claim contending it was entitled to modify Dequeant's benefits from TTD to supplemental earnings benefits (SEB); and, thereafter, reduced Dequeant's benefits based on his post-accident earning capacity. The workers' compensation judge granted Jennings' motion and ordered Dequeant to undergo vocational rehabilitation. The workers' compensation judge deferred ruling on the remaining claims until trial on the merits.
*267 In a letter dated December 6, 1994, Jennings offered Dequeant a modified light duty position which Dr. Franklin indicated Dequeant would have been able to perform "but for" him sustaining an unrelated stroke. Dequeant did not accept Jennings' job offer. Cheairs met with Dequeant in January of 1995; and, shortly thereafter, Jennings reduced Dequeant's TTD benefits from $212.87 per week to $456.63 per month in SEB based on light duty wages offered him.
However, the workers' compensation judge found Jennings was not entitled to reduce SEB payments to Dequeant based upon his pre-stroke earning capacity. She granted Dequeant SEB based upon zero earnings. The workers' compensation judge also found Jennings violated the confidentiality provisions of La.R.S. 23:1127 by releasing Dequeant's medical records to Cheairs and Douglass. As a result, she ordered Jennings to pay damages to Dequeant in the amount of $2,000.00 and attorney's fees in the amount of $6,000.00.
Jennings appeals the workers' compensation judge's ruling and assigns the following errors:
1. The Office of Workers' Compensation Hearing Officer erred in not allowing appellant to reduce the employee's benefits in accordance with his post-accident earning capacity at the modified job offered by appellant.
2. The Office of Workers' Compensation Hearing Officer erred in awarding penalties and attorney's fees for appellant's dissemination of the employee's medical records to its representatives or agents.
Dequeant also appeals the workers' compensation judge's judgment and asserts:
The hearing officer erred in failing to find that the City of Jennings was arbitrary and capricious in reducing David Dequeant's weekly compensation and in failing to award penalties and attorney's fees.

LAW & DISCUSSION
It is well settled in workers' compensation cases that appellate courts must apply the "manifest errorclearly wrong" standard of review. To determine whether manifest error occurred, the record must be reviewed in its entirety. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94); 630 So.2d 706, LeCroy v. Brand Scaffold Bldg., Inc., 95-1522, 95-1523 (La.App. 3 Cir. 2/23/96); 672 So.2d 181, writ denied, 96-1442 (La.9/27/96); 679 So.2d 1352. The factual findings of the workers' compensation judge may not be set aside without first determining that those factual findings are manifestly erroneous or clearly wrong. Key v. Insurance Co. of North America, 605 So.2d 675 (La.App. 2 Cir.1992). Great weight is given the workers' compensation judge's factual conclusions, reasonable evaluations of credibility, and reasonable inferences of fact. Dixon v. Louisiana Restaurant Association, 561 So.2d 135 (La.App. 3 Cir.1990).

JENNINGS' ASSIGNMENT OF ERROR NO. 1
By this assignment, Jennings contends the workers' compensation judge erred in not allowing it to reduce Dequeant's SEB in accordance with his post-accident earning capacity. To prevail on a claim for SEB, the supreme court held the injured employee must prove by a preponderance of the evidence that the work-related injury has resulted in his or her inability to earn wages equal to ninety percent or more of the wages he or she was earning at the time of the injury. Miller v. Roger Miller Sand, Inc., 94-1151 (La.11/30/94); 646 So.2d 330. The Supreme Court further stated:
Once the plaintiff has met this initial burden of proving entitlement to supplemental earnings benefits, the burden of proof shifts to the employer if it wishes to prove the employee is earning less than he or she is able to earn. The employer bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in the employee's or the employer's community or reasonable geographic region.
Miller, 646 So.2d at 335-336.
The pivotal issue in this case is whether Jennings carried its companion burden of proving Dequeant was physically capable of *268 performing the light duty job it offered to him. This issue is complicated by the fact that Dequeant suffered a stroke subsequent to his work injury. The record indicates the stroke was unrelated to Dequeant's back injury and caused him to become totally disabled. The record also indicates that prior to the stroke, Dequeant was reaching maximum recovery from his work-related back injury. Anticipating such recovery, Dr. Franklin (Dequeant's treating physician) approved the light duty job offered by Jennings to Dequeant. Dr. Franklin also approved light duty lifting for Dequeant up to 20 pounds maximum and up to 10 pounds on a frequent basis. Jennings offered light duty employment at 32 hours per week at a pay rate of $5.00 per hour. The duties of this job entailed picking up trash with a gig, placing trash in bags, and leaving trash bags along the street.
Dequeant argues he could not accept Jennings' offer because he was totally disabled by his cerebral stroke. Nevertheless, it is well settled where there is no causal relationship between the compensable injury and the subsequent event, the employer has no liability for compensation beyond the disability produced by the job connected accident. Miller, 646 So.2d 330. The supreme court held in Miller, "... in order to determine if plaintiff is entitled to continuing disability payments, we must determine the extent of his disability caused by the work-related fall, giving no consideration to any additional disability caused by the stroke." Id. at 335. (Emphasis added.)
The record establishes by a preponderance of evidence, "but for" Dequeant's subsequent stroke he could have returned to "some kind" of light duty employment. The workers' compensation judge, however, denied Jennings' request for a reduction because she found it failed to provide vocational rehabilitation services for Dequeant as required by the act. She stated:
This Court realizes that "but for" the stroke, Mr. Dequeant could possibly have returned to some form of work because his treating physician, in fact, said he was released to light duty as a result of the back problem. However, coupled with the light duty release is the involvement of a vocational rehabilitation evaluation. In this case, the Court previously determined that a rehabilitation evaluation with Mark Cheairs, a vocational rehabilitation selected by the defendant, was appropriate. Thereafter, Mr. Cheairs met with Mr. Dequeant and his attorney, Michael Miller on one occasion. This Court finds itself faced with the dilemma of whether that meeting between Mr. Cheairs, Mr. Dequeant and Mr. Miller is sufficient to satisfy the requirements of vocational rehabilitation set forth by statute. Based upon the Court's review of the record and after considering the law and the evidence, vocational rehabilitation was not fully offered as required by law. This Court believes that Mr. Cheairs thought he was accomplishing tasks required of him, however, he did not do any educational testing on Mr. Dequeant, nor did [sic] make a determination of Mr. Dequeant's interests, reading skills, intelligence, academic achievement, primary aptitudes, and transferable skills. No vocational advice was given by Mr. Cheairs to Mr. Dequeant.
* * * * * *
For these reasons, the Court finds that because Mr. Dequeant was released to light duty by a treating physician for the back ailment, he is entitled to supplemental earnings benefits based on zero earnings.
The workers' compensation judge concluded that Jennings and Cheairs failed to offer Dequeant meaningful vocational rehabilitation, therefore, she awarded Dequeant supplemental earnings benefits based on zero earnings. In so doing, the workers' compensation judge made a legal error.
La.R.S. 23:1226, regarding rehabilitation has nothing to do with a worker's entitlement to SEB. There is nothing in the law that makes it a consequence of a failure to provide sufficient rehabilitation that SEB is then based on a zero wage. Entitlement to SEB means a worker is unable to earn his pre-injury wages and therefore, is entitled to rehabilitation services. Noveh v. Broadway, Inc., 95-2081 (La.App. 1 Cir. 5/10/96); 673 *269 So.2d 349, writ denied, 96-1431 (La.9/13/96); 679 So.2d 109. But just because he may be entitled to both SEB and rehabilitation services, does not fix SEB at zero wages.
All workers who are covered under the Workers' Compensation Law are entitled to prompt rehabilitation services. La.R.S. 23:1226(B)(1). These services are arranged in options and "[t]he first appropriate option among the following must be chosen for the worker."
(a) Return to same position.
(b) Return to modified position.
(c) Return to related occupation suited to the claimant's education and marketable skills.
(d) On-the-job training.
(e) Short-term retraining program (less than twenty-six weeks).
(f) Long-term retraining program (more than twenty-six weeks but not more than one year).
(g) Self-employment.
As contemplated by La.R.S. 23:1226, a modified position was offered to Dequeant by Mayor Marcantel on December 6, 1994, who defined it as a maintenance job and described the various duties. He testified that this job was real and was available when offered. He further stated that someone had been doing the job prior to the hearing, but it was open again because the man had found another job. Dequeant was offered 32 hours a week at $5.00 an hour. Eventually the job was expanded to 40 hours a week.
Before Dequeant suffered a stroke on July 12, 1994, Jennings employed the services of Mark Cheairs, a vocational rehabilitation expert, to evaluate and assist Dequeant in his job placement or vocational training as required by La.R.S. 23:1226(B)(3). Dequeant refused to meet with Cheairs. Jennings then sought unsuccessfully to compel rehabilitation. As a result of his steadfast refusal, Dequeant did not meet with Cheairs until after he had suffered his stroke. However, Cheairs testified that before the stroke, he met with Jennings to see if there were any positions available. He consulted with Jennings to determine if modified employment would be available to Dequeant. Cheairs had prepared a job analysis on June 6, 1994, of a modified position available with Jennings prior to the stroke. Dr. Robert Franklin, Dequeant's doctor, met with Cheairs on June 27, 1994, and July 15, 1994. He subsequently approved the job description, in writing, minus grass cutting activities. Dr. Franklin stated that, but for the stroke, Dequeant could have returned to this light-duty position. Jennings was informed of this change and indicated that it could make employment available.
This is documentary proof that before Dequeant suffered his stroke, Jennings was working on a modified position for him. This was not an offer of a job after Dequeant suffered a stroke just to satisfy the requirements of the law. There is no basis in the record for us to conclude that this was a "mere sham rehabilitation." Jennings made concerted efforts to provide rehabilitation services for Dequeant. Dequeant was uncooperative and in fact refused the proffered services. Under the circumstances, Dequeant should not be allowed to use his refusal to accept rehabilitation services to gain increased SEB benefits, nor should Jennings be penalized because of the employee's refusal. Such a position is unsupported in the law and contrary to principles of justice.
It is obvious from this evidence that the workers' compensation judge not only committed manifest error in applying the law, but also in her factual finding that rehabilitation was not proper under La.R.S. 23:1226(B)(1)(b). Sincere efforts were underway to rehabilitate Dequeant before his stroke in order to return him to work in a modified position which fit within his limitations. Since he could not return to his original job, that was the next best option as contemplated by La.R.S. 23:1226. Also, since Dequeant could have returned to light-duty work, which was not disputed, he was entitled only to SEB. However, the workers' compensation judge committed error in applying the law by calculating SEB based on zero wages because she found Dequeant was not properly rehabilitated. SEB is determined by the employee proving by a preponderance of the evidence that he cannot earn 90% or more of his pre-injury wages. The *270 rate of SEB is determined by the employer proving an available job. We find that Jennings met its burden of proof that a job was available that Dequeant could perform. His SEB should be based on the rate of pay for the job offered by Jennings.

CALCULATION OF SEB
LSA-R.S. 23:1221(3)(a) provides the formula for calculating SEB as follows:
For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment.... Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
The record indicates that Dequeant's pre-injury wage was $319.28 per week. His average monthly pre-injury wage was thus $1,372.90 ($319.28 × 4.3 = $1,372.90). The job available for Dequeant as a trash collector for Jennings paid $5.00 per hour for 32 hours a week. Thus, his post accident average monthly wage would have been $688.00 ($5.00 × 32 hours × 4.3 = $688.00). Therefore, the difference in Dequeant's pre-injury monthly wage and his post accident wage is $684.90 ($1,372.90$688.00 = $684.90). SEB is defined to be sixty-six and two-thirds percent of the difference between the average monthly wage prior to the injury and the average monthly wage the employee is able to earn after the accident. In this case it is $456.60 per month ($684.90 × .666667 = $456.60). Accordingly, Dequeant's supplemental earnings benefit is fixed at $456.60 per month.

JENNINGS' ASSIGNMENT OF ERROR NO. 2
By this assignment, Jennings argues the workers' compensation judge erred in awarding penalties and attorney's fees for its dissemination of Dequeant's medical records to Douglass (a medical management nurse) and to Cheairs (the rehabilitation consultant). However, Jennings incorrectly stated the workers' compensation judge awarded "penalties" when she actually awarded "damages."
Pursuant to La.R.S. 23:1127 an employee, employer, and insurer may obtain medical information and records relating to the employee's injury from health care providers who have treated the employee; however, the statute further mandates sanctions if the employer or insurer breaches it's obligation to preserve the confidentiality of any records thus received. For such breach, the statute provides the claimant may recover for any "actual damages" sustained by him. The workers' compensation judge ruled Jennings violated this provision by releasing Dequeant's medical records to Douglass and Cheairs because they were "third persons." Moreover, the workers' compensation judge found "since Mr. Dequeant's benefits were reduced, `actual damages' were sustained." The record indicates Dequeant authorized Jennings' insurer or its representative to obtain his medical records on July 31, 1993. Jennings urges damages and attorney's fees were not due Dequeant because Douglass and Cheairs were its representatives.
The attorney for Dequeant requested "medical information" supporting the need for rehabilitation services from Cheairs. At least implicit in that request is a grant of access to the records for Cheairs. In any event, we apply Breaux v. Hoffpauir, 95-393 (La.App. 3 Cir. 11/8/95); 664 So.2d 726, reversed on other grounds and remanded, 95-2933 (La.5/21/96); 674 So.2d 234, and find that there was only a "technical breach" of the confidentiality provision of La.R.S. 23:1127.
Moreover, there were no damages proved. The only damage claimed by Dequeant was his benefit reduction from TTD to SEB. If Dequeant had accepted rehabilitation, he would have granted access to medical information for proper assessment and no doubt would have received the same reduction in benefits. The fact that he was noncompliant should not be construed to justify damages. Moreover, both we and the workers' compensation judge found that Dequeant was entitled *271 only to SEB. Accordingly, the workers' compensation judge erred in awarding damages and attorney's fees where none were proven.

PENALTIES AND ATTORNEY'S FEES
Dequeant contends he is entitled to penalties and attorney's fees because Jennings was arbitrary and capricious in reducing his weekly compensation. La.R.S. 23:1201 provides a workers' compensation claimant is entitled to penalties and attorney's fees if benefits are withheld or terminated arbitrarily, capriciously, or without reasonable cause by the employer. La.R.S. 23:1201; 23:1201.2. This court has held whether an employer's or workers' compensation carrier's alteration of claimant's workers' compensation benefits from TTD to SEB is arbitrary, capricious and without probable cause depends primarily on the facts known to the employer and carrier at the time of their action. Joiner v. Newberg Venture, 94-1533 (La.App. 3 Cir. 5/3/95); 657 So.2d 206.
Subsequent to Dequeant's back injury, he suffered a disabling stroke unrelated to his employment. Prior to the stroke, Dequeant was making full recovery from his employment related back injury. Had Dequeant not suffered a stroke, he could have returned to gainful employment. Dequeant's treating physician (Dr. Franklin) stated he would have been able to perform light duty work had he not suffered a stroke. Consequently, Jennings offered Dequeant a light duty job pre-approved by Dr. Franklin. In brief, Dequeant argues Jennings offered him a job it knew he could not accept because of his stroke induced disability. Dequeant further characterizes Jennings' job offer as "a legal maneuver ... with the sole intent of reducing" his weekly compensation benefits. Even if true, Jennings nevertheless proved Dequeant would have been able to perform "some kind" of light duty job had he not sustained an unrelated stroke.
The purpose of SEB is to compensate an injured employee for lost wage earning capacity which results from employment related accidents. Maxie v. Brown Industries, Inc., 95-19 (La.App. 3 Cir. 5/31/95); 657 So.2d 443. The stroke which disabled Dequeant was not employment related. The record contains an August 22, 1994 medical report in which Dr. Franklin states Dequeant "was reaching maximum medical improvement... given his back condition." Dr. Franklin also stated "I would have released him to some form of duty on July 12 had he not developed the CVA." A medical report which shows a claimant incapable of returning to his previous occupation, but capable of performing light duty work, may justify conversion of a claimant's workers' compensation and temporary total disability benefits to supplemental earnings benefits. Skipper v. Acadian Oaks Nursing Home, 93-1502 (La.App. 3 Cir. 6/1/94); 640 So.2d 674, writ denied, 94-1795 (La. 10/14/94); 643 So.2d 163 (La.1994).
Reviewing the record as a whole, we cannot say Jennings' decision to reduce Dequeant's weekly compensation was arbitrary, capricious and without probable cause. Accordingly, the workers' compensation judge's failure to award penalties and attorney's fees to Dequeant was not manifestly erroneous.

CONCLUSION
The workers' compensation judge properly declined to award penalties and attorney's fees for arbitrary and capricious handling of this claim. However, the workers' compensation judge was clearly wrong in awarding supplemental earnings benefits based on zero wages and in awarding damages and attorney's fees for the unauthorized release of medical records. We reverse the judgment of the workers' compensation judge and award supplemental earnings benefits based on post-accident wages of $688.00 per month beginning January 3, 1995. We also reverse the award of damages and attorney's fees for unauthorized release of medical records.
Judgment is hereby rendered in favor of David Dequeant and against the City of Jennings. The City of Jennings shall pay to David Dequeant supplemental earnings benefits in the amount of $456.60 per month for a period not to exceed the 520 maximum provided by La.R.S. 23:1221(3), together with legal interest on each past due payment from *272 its respective due date. The City of Jennings is entitled to an offset for any and all supplemental earnings benefits paid between January 3, 1995 and the date of this judgment.
All costs of this appeal are taxed to David Dequeant.
REVERSED AND RENDERED.
COOKS and THIBODEAUX, JJ., dissent.