711 So.2d 328 (1998)
Lena GILLEY, Plaintiff-Appellant,
v.
REEVES DELI MART, Defendant-Appellee.
No. 30355-WCA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1998.
Hamilton & Carroll by John Clay Hamilton, Oak Grove, for Plaintiff-Appellant.
Crawford & Anzelmo by Donald J. Anzelmo, Monroe, for Defendant-Appellee.
Before HIGHTOWER, WILLIAMS and CARAWAY, JJ.
HIGHTOWER, Judge.
In this worker's compensation action, plaintiff appeals the rejection of her claims for supplemental earnings benefits, penalties, and attorney's fees. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
While working as a cashier/clerk at Reeves Deli Mart on September 8, 1992, Lena Gilley sustained an injury to her back. Following a hearing on September 9, 1994, the worker's compensation judge retroactively awarded an indemnity of $132.09 per week continuing until claimant's release to return to work, together with penalties and attorney's fees. Shortly prior to the 1994 trial, Gilley and her family moved from Oak Grove, Louisiana to northwestern Arkansas. Subsequently, they relocated to northeastern Oklahoma, where they have continued to reside.
With defendant's knowledge and consent, Dr. Paul Raby, an orthopedic physician in Arkansas, began treating the claimant. Presently, in addition to housekeeping chores, Gilley takes daily care of her invalid husband, teenage son, and four-year-old grandson. Her only medications are muscle relaxers and pain medicine prescribed for her husband.
*329 In April 1995, pursuant to job analyses submitted by Janet Papworth, a vocational rehabilitation expert, Dr. Raby approved the job of convenience store cashier/clerk for claimant, with certain limitations on her lifting, stooping, and work hours during the first 30 days.[1] Gilley's former employer wrote to her, in May 1995, offering a position at the store in Oak Grove and indicating he would accommodate her physician's restrictions. In October 1995, defendant once more proposed that she return to work at the business. Claimant never responded to either offer. In September 1995, and again in November 1995, Dr. Raby released plaintiff from his care. After defendant terminated her indemnity and medical benefits in November 1995, Gilley filed a claim for the reinstatement of payments and the assessment of penalties and attorney's fees. At trial, the parties stipulated that claimant's average wage at the time of her injury resulted in a compensation rate of $132.09 per week and that she had received such sums in temporary total disability benefits through November 1, 1995.
During the hearing, at the close of Gilley's case, defendant moved for an involuntary dismissal.[2] The worker's compensation judge immediately found plaintiff not entitled to temporary total disability payments, but deferred any ruling anent supplemental earnings benefits until additional evidence had been received. In written reasons after completion of the trial, the administrative official dismissed the remaining claims. This appeal ensued.

DISCUSSION
Temporary total disability benefits terminate when the patient has reached the point of maximum medical improvement and continued regular treatment by a physician is not required. La. R.S. 23:1221(1)(d).[3] Any entitlement to such benefits requires the employee to show by clear and convincing evidence, unaided by any presumption of disability, that the claimant is physically unable to engage in any employment. La. R.S. 23:1221(1)(c). At the hearing sub judice, Gilley introduced no medical evidence of a disability. In fact, she admitted that she had not seen Dr. Raby regularly since November 1995, after he approved her return to work in both September 1995 and again in November 1995.[4] The hearing officer thus concluded Gilley is no longer entitled to temporary total disability payments. Indeed, that aspect of the judgment has not been appealed.
Supplemental earnings benefits are available to an employee who is able to prove, by a preponderance of the evidence, that a work-related injury has rendered the person unable to earn at least 90% of pre-accident wages. Glascock v. Georgia-Pacific Corp., 25,677 (La.App.2d Cir. 03/30/94), 635 So.2d 474; Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App. 2d Cir.1991). The purpose of such an award is to compensate an injured employee for the wage earning capacity lost as a result of the accident. Glascock, supra. Once the plaintiff establishes a prima facie case, the burden shifts to the employer to show that employment is generally available within the claimant's physical capabilities and in her or the employer's reasonable geographic region. Romero v. Grey Wolf Drilling Co., 594 So.2d 1008 (La. App. 3d Cir.1992). Actual job placement, or even an offer of employment, is not necessary to prove the availability of employment. Mayeux v. Kentucky Fried Chicken, 28,163 (La.App.2d Cir. 04/03/96), 671 So.2d 1261, writ denied, 96-C-1133 (La.06/07/96), 674 So.2d 966; Romero, supra. If the employer's burden is met, then the employee must show by clear and convincing evidence, without *330 any presumption of disability, that she is unable to perform the available employment solely as a consequence of substantial pain. La. R.S. 23:1221(3)(c)(ii).
More specifically, the supreme court recently resolved that an employer discharges its burden of proving job availability by establishing, at a minimum, the following:
(1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region;
(2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and
(3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.
Banks v. Industrial Roofing & Sheet Metal Works, Inc. 96-2840 (La.07/01/97), 696 So.2d 551. Even assuming, without deciding, that Gilley established a prima facie case that her work-related injury rendered her unable to earn at least 90% of her pre-accident wages, the record before us reflects that Reeves well shouldered the burden of proving job availability.
Defendant twice corresponded with Gilley, offering her a job within her doctor's stated limitations.[5] The statute states that the job must be "proven available to the employee in the employee's or employer's community or reasonable geographic region." (Emphasis added.) La. R.S. 23:1221(3)(c)(i). Given the facts of this case, including the employer's proposal that claimant return to a job at the deli mart where she previously worked, and with personal decisions unrelated to any disability having caused Gilley to move from Oak Grove, we agree that the employment offered by Reeves clearly constitutes a proven available position within the meaning of the statute. Moreover, after reviewing Gilley's work experience and the job opportunities in Arkansas both currently and in November 1995, Papworth testified that positions existed for claimant's employment within her reasonable geographical area and the physical capabilities assessed by Dr. Raby.
Both in brief and at trial, in an effort to urge her inability to earn 90% of her pre-injury salary, claimant emphasized Dr. Raby's instructions that she work only four hours a day for the first month. The first indication of this restriction, however, occurred in the doctor's notes on the approved job analysis sent to Papworth in April 1995. Much later, even after claimant's physician ultimately released her from his medical care in September 1995, Reeves did not terminate compensation benefits for almost another two months. Similarly, Gilley's testimony indicated she did not remember being told about any need for re-evaluation after the trial period and that she understood the limitation would automatically be lifted after thirty days. A reasonable interpretation of Dr. Raby's notation, then, is that the thirty-day period began when he released plaintiff from his care, which would mean the restriction terminated prior to the cessation of temporary total disability payments.
The worker's compensation judge concluded that Gilley based her "inability to work" upon a personal belief, unsupported by any medical evidence, that she simply could not work. The administrative official thus deemed this a classic situation in which circumstances unrelated to the accident, rather than any disability, caused plaintiff not to return to work. We do not find that determination to be manifestly erroneous.

CONCLUSION
Accordingly, for these reasons, we affirm the decision of the hearing officer at claimant's cost.
AFFIRMED.
NOTES
[1] Dr. Raby noted that Gilley should be working four hours a day for the first month.
[2] Observing that Gilley had introduced no medical evidence in support of her claim and that circumstances other than disability prevented her from attempting to obtain employment even after being medically released, Reeves argued that the law and the facts provided plaintiff no grounds for relief.
[3] According to the statute, temporary total disability benefits shall cease when the employee's physical condition has improved to the point that continued regular treatment by a physician is not required, or six months after the injury, whichever occurs first.
[4] Gilley's testimony reflects that she subsequently visited Dr. Raby only once, in July 1996.
[5] Even on the day of the hearing, Michael Reeves, owner and operator of Reeves Deli Mart, testified that he had an open position if Gilley wanted to return to work at the store.