731 So.2d 518 (1999)
Carolyn WILEY, Plaintiff-Appellant,
v.
GRAND CASINO AVOYELLES, Defendant-Appellee.
No. 98-1468.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1999.
Eugene A. Ledet, Jr., Alexandria, for Carolyn Wiley.
Merilla B. Miller, Baton Rouge, for Grand Casino Avoyelles.
*519 Before WOODARD, DECUIR, SULLIVAN, GREMILLION, and PICKETT, Judges.
GREMILLION, Judge.
The plaintiff, Carolyn Wiley, appeals the judgment of the workers' compensation judge dismissing her disputed claim for compensation. The judgment held that her employer, Grand Casino Avoyelles (Grand Casino), correctly terminated her supplemental earnings benefits (SEBs) because a position was available to her and within the work restrictions placed on her by her physician. We reverse in part and affirm in part.

FACTS
On September 8, 1996, Wiley, a change person for Grand Casino, slipped and fell while walking down stairs at work injuring her right ankle/lower leg. She was treated by Dr. Warren Plauché, her family physician, and Drs. Robert Po and David Pope, orthopedic surgeons. She was eventually diagnosed by Dr. Pope as suffering from chronic posterior tibial tendinitis. As a result of this injury, Wiley received weekly workers' compensation benefits from Grand Casino. She returned to work six weeks later, but left after two days because she could not endure the standing and walking required of her position. She returned to a modified light duty position on April 14, 1997, after she was released to work by Dr. Plauché. In order to return to work, Wiley had to renew her tribal gaming license, which is required of all Grand Casino employees. Wiley left this position after a short period of time due to the pain in her leg.
Dr. Plauché placed a short walking cast on her leg on April 28, 1997, and continued her on light duty work restrictions. Wiley did not return to work because she found it hard to ambulate in the cast. On May 12, 1997, Dr. Plauché placed her in a removable fracture walker. On September 14, 1997, Dr. Plauché placed new restrictions on Wiley by limiting her standing and walking from one to four hours, and by having her avoid situations where she had to do excessive walking.
On September 9, 1997, Wiley received a letter from Cecil Williams, a commissioner with the Tunica-Biloxi Gaming Commission, stating that his office had attempted to contact her concerning her application for renewal of her gaming license. The letter gave Wiley until September 15, 1997, to contact his office or her tribal license would be revoked. On September 16, 1997, she received another letter from Williams. This letter stated that a background investigation had been conducted on her application revealing two civil suits filed against her in Avoyelles Parish, which she had failed to list. The letter revoked Wiley's gaming permit, and ordered her to surrender it to the Gaming Commission immediately. The letter further provided that she could appeal the revocation by requesting an appeal in writing.
Renia Broussard, the workers' compensation coordinator for Grand Casino, attempted to contact Wiley twice on September 17, 1997, to inform her of a position which fit the restrictions placed on her by Dr. Plauché, and would pay at her preinjury wage rate. Since Wiley did not possess a phone, Broussard attempted to contact her through her niece. She was unable to do so. When Wiley learned of the position, she was unable to take it because of the revocation of her gaming license. Wiley's SEBs were terminated on September 23, 1997.
Wiley filed a disputed claim for compensation on January 6, 1998, seeking reinstatement of her indemnity and medical benefits, and the award of penalties and attorney's fees. A hearing was held in this matter on June 16, 1998. The parties stipulated that Wiley earned $7.42 per hour, worked forty hours per week, and her temporary total disability rate would be $205.25 per week. After taking the matter under advisement, the workers' compensation judge issued written reasons finding that Grand Casino properly terminated *520 Wiley's compensation benefits because the job it offered her was available to her, was within the restrictions placed on her by Dr. Pope, and would have enabled her to earn at least ninety percent of her pre-injury wage. The workers' compensation judge held that the loss of her gaming license was due to Wiley's own personal situation and was unrelated to the disability produced by her work-related injury. Finding that Grand Casino properly terminated Wiley's SEBs, the workers' compensation judge dismissed her disputed claim for compensation. A judgment was rendered in this matter on July 13, 1998. This appeal followed.

ISSUES
On appeal, Wiley raises two errors committed by the workers' compensation judge in reaching her decision. She argues that the workers' compensation judge erred in finding Grand Casino's termination of her SEBs proper, and in failing to award her penalties and attorney's fees as a result of this termination.

SUPPLEMENTAL EARNINGS BENEFITS
An employee, who is injured as the result of a work-related accident, is entitled to SEBs if her injury renders her unable to earn at least ninety percent of her pre-injury wages. La.R.S. 23:1221(3)(a). The burden of proving this rests with the employee; the standard of proof is a preponderance of the evidence. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94); 630 So.2d 733. "Th[is] analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers' compensation is to be liberally construed in favor of coverage." Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La. 1989).
If the employee succeeds in carrying her burden of proof, the burden shifts to the employer to prove that the employee is physically able to perform a certain job and that the job was offered to the employee, or that the job was available to the employee in her or the employer's geographic region. La.R.S. 23:1221(3)(c)(i); Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97); 696 So.2d 551. Success in this endeavor will defeat the employee's claim for SEBs or, at the least, establish her earning capacity. Id. Since the findings pertaining to such issues are factual in nature, the manifest error standard of review applies on appeal. Id.

FIRST ASSIGNMENT OF ERROR
In her first assignment of error, Wiley argues that the workers' compensation judge erred in finding that her SEBs were properly terminated by Grand Casino. Breaking this assignment down into two issues, she argues that the position offered to her by Grand Casino should not be considered "available" since she was unable to accept the job due to her lack of a gaming license; and since prior approval of the position was never obtained from her physician. We will address the second issue first.

PRIOR APPROVAL
Wiley argues that since there is no evidence that Grand Casino submitted the September 1997 position to her treating physician prior to offering it to her, it cannot be considered available pursuant to Banks, 696 So.2d 551. We disagree.
On July 14, 1997, Dr. Pope placed restrictions on Wiley limiting her standing and walking to one to four hours in an eight hour day, and told her to avoid excessive walking. He further restricted her to occasionally bending, squatting, twisting, and climbing, and limited her to pushing and pulling thirty pounds.
On March 24, 1997, Dr. Pope recommended a functional capacity evaluation be performed on Wiley. The evaluation was performed before Wiley's next appointment with Dr. Pope on April 28, 1997, *521 however, no record of the evaluation was introduced into evidence. In his notes, Dr. Pope stated that Wiley was in for a followup of the evaluation and because of her leg. The only comment he made of the evaluation was that Wiley's efforts were valid, and that she gave a reliable study.
Broussard testified that the human resources office assistant job she identified in September 1997, was within the restrictions placed on Wiley by her doctor. Wiley testified that she was physically able to perform this job. Since the employer is only required to prove that an employee is physically able to perform a job by a preponderance of the evidence, we find that the September 1997 position may be considered even though there is no evidence that it was presented to Dr. Pope. This portion of the first assignment of error is dismissed as being without merit.

JOB AVAILABILITY
In her written reasons for judgment, the workers' compensation judge narrowed the issue before her to "whether the offer of employment within the claimant's physical restrictions, is available to the claimant if the claimant is not eligible for the necessary license required to work for this employer." It is undisputed that a job was offered to Wiley which was within her capabilities.
In Banks, 96-2840 at pp. 10-11; 696 So.2d at 557, the supreme court established the minimum standard which the employer must prove, by competent evidence, in order to prove job availability:
(1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region:
(2) the amount of wages that an employee with the claimant's experience and training can be expected to earn in that job; and
(3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.
By "suitable job," we mean a job that claimant is not only physically capable of performing, but one that also falls within the limits of claimant's age, experience, and education, unless, of course, the employer or potential employer is willing to provide any additional necessary training or education.
(Footnote omitted).
In her brief, Wiley argues that Grand Casino was unable to prove by competent evidence that an actual position was available to her at the time she received notice of the proffered position from Broussard. In support of her argument, Wiley points to a footnote from Banks, 696 So.2d at 557-8, n. 4. There, the court noted:
We note that Bank's driver's license was suspended in late February 1995 as a result of a D.W.I. This event, however, was subsequent to Papworth's identification of two jobs that would require a driver's license: a tractor-trailer driver and a cab driver. On December 1, 1994, the date upon which Papworth notified Banks about these jobs, Banks still had a valid driver's license. Though he did not have a commercial driver's license at that time, presumably, he could have acquired one. Therefore, these positions can be considered in determining whether Industrial satisfied its burden of proof. We do not reach the issue, in the case before us, of whether the employee's loss of his driver's license, through his own fault, after his work-related injury would preclude the employer from using jobs that require a driver's license in demonstrating available jobs.
Broussard testified that the human resource office assistant position was modified to fit within the restrictions placed on Wiley by her physician. She stated that the position would have paid Wiley her pre-injury wage, and would have been available to her as long as required by her restrictions. Broussard stated that she *522 attempted to contact Wiley twice by phone on September 17, 1997. She further testified that she contacted Bettie Guy, a claims adjustor for Louisiana Workers' Compensation Corporation (LWCC), and told her that she had attempted to contact Wiley. Broussard stated that Guy sent a letter to Wiley on September 16, 1997, stating that Broussard had attempted to contact her in order to offer her the position. Broussard testified that Wiley never contacted her about the position. Guy did not testify at the hearing although she was available for questioning.
Wiley testified that she did not hear from LWCC about the proffered position until after her license had been revoked. At that time, she stated that she was unable to accept the position because she lacked the requisite license. She did not feel that she could perform her pre-injury position with Grand Casino, but stated that she was capable of performing the position offered to her in September 1997. With regard to the loss of her gaming license, Wiley testified that she was unaware of the two civil lawsuits filed against her when she applied to renew her gaming license in April 1997. She stated that she became aware of them in July 1997, and admitted that they were for valid debts which she was paying off. Wiley testified that she attempted to notify the Gaming Commission about either one or both suits in August 1997. She stated that the person she spoke with at the Gaming Commission told her not to worry about it, and that they would contact her if there was a problem when they did her application.
Wiley testified that she contacted Williams after receiving the September 9, 1997 letter from the Gaming Commission. She stated that he told her to turn in her gaming license because it was being revoked due to her failure to list the judgment taken against her. Wiley testified that when she asked about a hearing, Williams told her that they would discuss it when she turned in her license. She stated that he informed her that she could either ask for an appeal orally or by written request, and that they would discuss it when she went in to the Gaming Commission office. She stated that she attempted to see Williams when she turned in her license, but was unable to do so. She stated that she also phoned several times to talk to him, but he never returned her calls.
Rudy Wambsgans, the chairman of the Tunica-Biloxi Gaming Commission, testified that the Gaming Commission licenses all of Grand Casino's employees. He stated that the application procedure for a license renewal includes running background checks on information contained within the license application. License renewals are required annually of all Grand Casino employees. Wambsgans testified that financial stability is one of the prerequisites for obtaining a gaming license. He stated that a person who pays their bills is considered financially stable. Wambsgans testified that Wiley's gaming license was revoked on September 16, 1997, due to her failure to list in her renewal application two civil suits filed against her in Avoyelles Parish. He stated that her file did not contain a written request for an appeal following the revocation of her license. He explained that the only way an employee could appeal a revocation was by requesting one in writing.
In reaching her decision, the workers' compensation judge held that the situation in this matter was similar to those found in Gilley v. Reeves Deli Mart, 30,355 (La. App. 2 Cir. 4/8/98); 711 So.2d 328 and City of Jennings v. Dequeant, 96-943 (La.App. 3 Cir. 11/5/97); 704 So.2d 264, writ denied, 98-0610 (La.4/24/98); 717 So.2d 114. In Gilley, the employer twice offered employment to the employee even though she had moved out of state. Since the employee's decision to move was based on personal reasons unrelated to her disability, the court held that the position offered to her satisfied La.R.S. 23:1221(3)(c)(i), since the position was located within the employer's community or reasonable geographic *523 region. In City of Jennings, 704 So.2d 264, the employee, who was recovering from a work-related injury, suffered an unrelated stroke. The court held that the workers' compensation judge erred in awarding him SEBs based on zero earnings when there was evidence that, but for the stroke, he could have returned to light duty employment. The court stated, "it is well settled where there is no causal relationship between the compensable injury and the subsequent event, the employer has no liability for compensation beyond the disability produced by the job connected accident."
Under the particular facts and circumstances of this case, we find that the workers' compensation judge erred in determining that the position offered by Grand Casino to Wiley was available. Wiley received notification from the Gaming Commission that her gaming license was revoked on September 16, 1997. There was conflicting testimony from Broussard concerning the date Wiley was informed of the available position. She tried to contact Wiley twice on September 17, 1997, but was unsuccessful. She then informed Guy of her failure, which lead Guy to send Wiley a letter on September 16, 1997. Broussard's source of information was her file, thus, she was not testifying from memory. She would have us believe that, although her notes reflect she attempted to contact Wiley on the seventeenth, Guy wrote Wiley the day before she attempted to contact her, based on her failure to contact her on the seventeenth. This was the same date that her gaming license was revoked. Keeping in mind that workers' compensation is to be liberally construed in favor of coverage and the confusion surrounding the date of availability, we find that the position offered by Grand Casino was not available on the date Wiley learned of it due to her lack of a gaming license.
Our decision is buttressed by the fact that, although Grand Casino offered her a position, it also denied her the right to accept that position by revoking her gaming license. We might decide this issue differently were the situation here similar to Banks, 696 So.2d 551, where the subsequent loss of a driver's license results in the employee's inability to perform an available position. However, where the Tunica-Biloxi Gaming Commission d/b/a Grand Casino Avoyelles is the arbiter of whether Wiley possesses the license required for her to accept the position offered, we are compelled to find that the position was unavailable to Wiley on the date she learned of it.
We further note that the workers' compensation judge appears to concentrate on the actions of Wiley in reaching her decision. In her conclusion, she states:
In light of all the facts
 that Ms. Wiley did not attempt a physical return to work from late April, 1997 through September, 1997 even though her doctor continued to release her to work;
 that Ms. Wiley had knowledge of the judgments by at least July 1997, (probably before that time) yet failed to correct the circumstances or adequately address the potential problem so that she could continue to hold a gaming license; and
 that Ms. Wiley chooses to blame the Commission for her own lack of effort to formally request an appeal hearing in writing; the Court finds that Ms. Wiley's personal decisions unrelated to her work accident, affected the availability of the employment offered by the Casino.
Wiley correctly points out another footnote in Banks, 696 So.2d at 558, n. 5, in which the court stated that "an employer cannot point to a claimant's lack of effort in lieu of the employer's presenting sufficient evidence of job availability with the claimant's physical capabilities." The burden of proof is on the employer, and all of the elements for proving job availability can be "proven without the cooperation or participation of the employee." Id. Thus, we *524 find that the workers' compensation judge erred by placing the burden on Wiley, instead of on Grand Casino.
Considering our findings and Grand Casino's failure to introduce evidence concerning any other positions available to Wiley, we reverse the judgment of the workers compensation judge and award Wiley SEBs based on zero earnings. The parties stipulated that Wiley earned $7.42 per hour and worked forty hours per week. This would result in a pre-injury wage of $296.80 per week ($7.42 × 40 hours = $296.80). Her average monthly wage would compute to $1,276.24 ($296.80 × 4.3 = $1,276.24). Based on zero earnings, Wiley's SEBs are fixed at $850.83 per month ($1,276.24 × .666667 = $850.83). La.R.S. 23:1221(3)(c)(i). These benefits are retroactive to September 23, 1997, the date Grand Casino terminated her SEBs.

PENALTIES AND ATTORNEY'S FEES
In her second assignment of error, Wiley argues that the workers' compensation judge erred in failing to award her penalties and attorney's fees as a result of Grand Casino's improper termination of her SEBs.
Whether an employer should be cast with penalties and attorney's fees is a finding of fact which will not be reversed in the absence of manifest error. Barker v. Allen Canning Co., 95-252 (La.App. 3 Cir. 10/4/95); 663 So.2d 320, writ denied, 95-2688 (La.1/12/96); 666 So.2d 323. An employer will only be responsible for penalties and attorney's fees if it fails to reasonably controvert a workers' compensation claim, and if its failure to pay benefits is arbitrary, capricious, and without probable cause. La.R.S. 23:1201, 1201.2. However, an employer will not be penalized for bringing a close issue to court. Granger v. Nelson Logging, 96-223 (La.App. 3 Cir. 12/4/96); 685 So.2d 400.
Although the workers' compensation judge did not directly address this claim, her denial of Wiley's disputed claim for compensation effectively acted as a denial of penalties and attorney's fees. After reviewing the record, we find no error in the denial of this claim. This was a sufficiently close issue, and Grand Casino should not be penalized even though we reversed the workers' compensation judge's decision on appeal. Since we have found no other cases addressing this issue, other than the footnote in Banks, 696 So.2d 551, there is no clear answer to this question. Accordingly, we cannot say that the workers' compensation judge erred in denying penalties and attorney's fees. This assignment of error is dismissed, and the judgment of the worker's compensation judge is affirmed.

CONCLUSION
For the foregoing reasons, we reverse the judgment of the workers' compensation judge and award supplemental earnings benefits to the plaintiff-appellant, Carolyn Wiley, at the rate of $850.83 per month. The judgment is affirmed with respect to her claim for penalties and attorney's fees. The costs of this matter are assessed equally between the parties.
REVERSED AND RENDERED IN PART; AFFIRMED IN PART.
DECUIR, J., DISSENTS AND ASSIGNS REASONS.
DECUIR, J., dissenting.
I respectfully dissent. Ms. Wiley, by failing to responsibly manage her finances, rendered herself unfit for available casino employment. The majority finds that the employer must pay SEB.
The majority reads Banks v. Indus. Roofing & Sheet Metal, 96-2840 (La.7/1/97); 696 So.2d 551, to require that a proffered job must be "available" at the time of proffer even if the employee has disqualified himself for reasons unrelated to his injury. I cannot subscribe to such a strained reading of Banks.
*525 The court in Banks specifically declined to reach the issue of whether the employer is required to overcome obstacles created by the employee's own fault in proving job availability. I believe the majority errs in placing that burden on the employer. In City of Jennings v. Dequeant, 96-943 (La. App. 3 Cir. 11/5/97); 704 So.2d 264, writ denied, 98-0610 (La.4/24/98); 717 So.2d 1174, we noted that in the absence of a causal relationship between the compensable injury and the subsequent event, the employer has no liability for compensation beyond the disability produced by the compensable injury. If this is true for an employee who suffers a stroke, as in City of Jennings, surely it is unreasonable to make the employer liable for continued compensation where the employee by his own fault renders himself unable to fill an available job.
The majority opinion leads to absurd and unconscionable results. Is the trucker with a DWI, alluded to in Banks, entitled to SEB from the trucking company employer who offers a job driving a truck? Should a chemical plant be required to pay SEB when at the time of its job proffer the employee tests positive for illegal drugs? Can an employer be required to pay SEB when at the time of its job proffer the employee is incarcerated? May it never be so.
Moreover, the majority opinion side steps the manifest error standard by seizing on the trial judge's reference to Ms. Wiley's lack of effort on her own behalf. The majority suggests that this impermissibly transferred the burden of proof to Wiley. To the contrary, the trial court merely points out that if Ms. Wiley could not accept the proffered job, she had no one to blame but herself. Likewise, the majority intrudes into the province of the trial court by implying that the casino and the licensing board colluded to deny Ms. Wiley a job. The evidence on that issue was before the trial court. The fact that the majority disagrees with the court's conclusion is not grounds for reversal. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The employer made a job available for Ms. Wiley. Ms. Wiley, due to her own irresponsibility, was unavailable to perform the job. For the foregoing reasons, I respectfully dissent.