744 So.2d 704 (1999)
Teresa TAYLOR, Plaintiff-Appellant,
v.
COLUMBIAN CHEMICALS, Defendant-Appellee.
No. 32,411-WCA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1999.
*706 Street & Street by C. Daniel Street, Monroe, Counsel for Plaintiff-Appellant.
Gibbens, Blackwell & Stevens by J. Louis Gibbens, New Iberia, Counsel for Defendant-Appellee.
Before NORRIS, C.J., and STEWART and GASKINS, JJ.
NORRIS, Chief Judge.
The claimant, Teresa Taylor, and the employer, Columbian Chemicals Co., both appeal various aspects of a judgment of the Workers Compensation Judge ("WCJ"). For the reasons expressed, we amend the judgment to delete an offset of medical expenses under La. R.S. 23:1212 and award all such expenses incurred. We otherwise affirm.

Factual and procedural background
Teresa Taylor was employed at Columbian in Swartz, Louisiana as a general clerk earning $8.89 an hour. On September 27, 1996 she was carrying a mail crate into the Administration Building when she slipped and fell in a puddle of rainwater. She landed "flat on her bottom," with the mail crate coming down on her legs. She suffered immediate low back pain, for which she was taken to St. Francis Medical Center in Monroe. X-rays showed nothing broken, so she was sent home. In the month or so after the accident, she saw her family doctor in Mer Rouge, Dr. Spires. He gave her some treatments that "stung real bad," and eventually ordered a CT scan of her lumbar spine; this was normal.
Ms. Taylor testified that because of her back, she stayed off work two weeks, receiving full pay. Records from both St. Francis and Dr. Spires are silent as to whether she reported a knee injury. However, she testified that within a few days after the accident, her right knee was bruised and swollen, that she showed this to her co-workers at Columbian, and that shortly before Thanksgiving she could not walk because of knee pain. Nevertheless she continued working for several months.
In March 1997, nearly six months after the accident, she went to a Monroe orthopedist, Dr. Gavioli, with complaints about her back and knee. Dr. Gavioli ultimately decided that Ms. Taylor's back problems were chiefly degenerative, but had been temporarily aggravated by the fall. As for her knee, he found "rather exquisite tenderness" and some crepitus, and suspected a torn meniscus. He stated in his office report, "She was not exactly sure how it [the knee pain] began. It might have been when she was picking up some boxes." The doctor's records suggest that Ms. Taylor first attributed her knee injury to the work-related accident on May 14, 1997, after they had discussed possible arthroscopic surgery. Ms. Taylor, however, insisted that on her first visit to Dr. Gavioli in March she told him the knee injury occurred when the mail crate fell on her leg. At any rate, Dr. Gavioli testified that the type of injury she described could "definitely" cause torn knee cartilage.
Ms. Taylor opted for the knee surgery, but Columbian would not approve it for *707 comp payment. Instead, she used hospitalization insurance she had "through Columbian." This covered all but $550.20 of her medical expenses. Dr. Gavioli operated on July 27, finding no torn meniscus, only some rough cartilage which he removed. He instructed her to stay off the knee for four to six weeks. Ms. Taylor filed the instant disputed claim in late August 1997.
Dr. Gavioli approved her to return to regular duty work on September 3. He testified she would have difficulty squatting and climbing stairs, "although that was not really a severe or uncommon problem."
Ms. Taylor missed six weeks of work post-operatively, drawing sick leave equal to 60% of her normal wages. She testified that after Dr. Gavioli released her, she continued to suffer nagging knee pain, and her knee sometimes "gave way" on her, resulting in several missed days of work through the end of 1997.
Ms. Taylor left Columbian at the end of December 1997 because the employer was closing the Swartz plant. She received a severance package that paid her wages through July 1998. She moved to Shreveport and testified at trial that she has worked two temporary clerical jobs. She feels she cannot do all the lifting required because of her knee. In June 1998, about one month prior to trial, she saw a Shreveport orthopedist, Dr. Etheredge, who recommended light duty work only. However, she told the WCJ that had Columbian not closed its doors, she would still be working there today.
The parties went to trial in July 1998, stipulating Ms. Taylor's employee status, a work-related accident, and a comp rate of $237.18 per week. Ms. Taylor testified on her own behalf and offered documentary evidence of her medical treatment and expenses. Aside from cross examining Ms. Taylor, Columbian presented no evidence.
The WCJ ruled from the bench that Ms. Taylor had proved a work-related knee injury and was entitled to temporary, total benefits for the six weeks following her knee surgery. This was at the stipulated amount, but subject to a credit for disability benefits received. The WCJ further awarded her all medical expenses "except those expenses already paid by other insurance," or a total of $550.20. Finding that Columbian made not "one shred of investigation to find out about that knee," the WCJ assessed penalties of $2,000 and attorney fees of $4,000. Citing Ms. Taylor's own testimony, the WCJ rejected the claim for SEB. Finally, the WCJ assessed costs to Columbian. Ms. Taylor appealed devolutively, and Columbian has answered. We will address Columbian's arguments first.

Discussion: Causation and medical benefits
By its first assignment of error Columbian contests the award of medical benefits for Ms. Taylor's knee surgery. The thrust of the argument is that she did not prove that a work-related accident caused the knee condition or necessitated the surgery. In support it cites her apparent failure to report a knee injury at the emergency room, to her family doctor, or to her treating orthopedist, Dr. Gavioli, until nearly six months after the accident, and her failure to produce any other corroborating evidence. It also argues that Dr. Gavioli's finding of causation should be discounted because of Ms. Taylor's inconsistent statements.
An employee is entitled to compensation benefits if she receives a personal injury by accident arising out of and in the course of her employment. La. R.S. 23:1031 A. The employee has the burden of proving, by a preponderance of the evidence, that her disability is related to an on-the-job injury. Walton v. Normandy Village Homes Ass'n Inc., 475 So.2d 320 (La.1985); Stevens v. Wal-Mart Stores, 27,977 (La.App. 2 Cir. 11/1/95), 663 So.2d 543. Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact *708 sought to be proved is more probable than not. Id. For the employee to recover, she must show that her employment somehow caused or contributed to the disability, but she need not establish the exact cause. Id.; Andrews v. Music Mountain Water Co., 25,634 (La.App. 2 Cir. 4/6/94), 637 So.2d 571, writ denied 94-1190 (La.6/24/94), 640 So.2d 1356. A claimant's own testimony may be sufficient to prove causation by a preponderance of the evidence, provided (1) no other evidence discredits or casts serious doubt upon the claimant's version of the incident, and (2) her testimony is corroborated by circumstances surrounding the alleged incident. Bruno v. Harbert Int'l Inc., 593 So.2d 357 (La.1992); Lubom v. L.J. Earnest Inc., 579 So.2d 1174 (La.App. 2 Cir.1991.)
If the employee proves a work-related injury, the employer is required to furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of the State as legal for a compensable injury. La. R.S. 23:1203 A. The worker claiming medical benefits must prove by a preponderance of the evidence the necessity and relationship of the treatment to the work-related accident. Chitman v. Davison Trucking, 28,073 (La.App. 2 Cir. 2/28/96), 669 So.2d 671.
The WCJ's findings are subject to the manifest error rule. Hoy v. Gilbert, 98-1565 (La.3/2/99), ___ So.2d ___, 1999 WL 105311; Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706. Only when documents or objective evidence so contradict the witness's story, or that story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it, may the appellate court find manifest error. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990); Stevens v. Wal-Mart, supra.
Ms. Taylor testified that her knee problems began with the work-related accident of September 27, 1996, progressed to the point that she underwent surgery, and still persist; Dr. Gavioli corroborated that the accident described could cause the injury sustained. The only evidence that she promptly reported the knee injury to anyone was her own testimony, but this is not fatal to the claim. Bruno v. Harbert Int'l, 593 So.2d at 362; Nelson v. Roadway Express Inc., 588 So.2d 350 (La.1991). She denied any prior knee injury or pain, and the WCJ expressly found her credible on this point, providing corroborating circumstances for the claim. Sistler v. Liberty Mutual, supra. Notably, there was no record evidence of any other source or cause of Ms. Taylor's knee condition, and no expert testimony to contradict Dr. Gavioli's diagnosis and surgical findings. In short, we cannot say the WCJ was plainly wrong to find that the September 1996 accident caused the knee injury.
Columbian's opposition to the award of necessary medical expenses is premised on reversing the finding of causation. Since that finding, however, is not plainly wrong, the argument is undermined. Dr. Gavioli testified by deposition that arthroscopic surgery was needed to correct Ms. Taylor's knee problems. There is no record evidence to show otherwise. This assignment lacks merit.

Penalties and attorney fees
By its final assignment of error Columbian contests the award of penalties and attorney fees. In support, it cites Ms. Taylor's apparent failure to report a knee injury at the emergency room or to her family doctor, as well as Dr. Gavioli's office notes reporting she initially did not know how the knee pain began. In view of these facts, Columbian urges the WCJ was plainly wrong to find the failure to authorize the surgery "arbitrary and capricious."
Medical benefits for work-related injuries must be paid within 60 days after the employer or insurer receives written notice thereof. La. R.S. 23:1201 E. Failure to provide payment within this time *709 subjects the employer to a penalty not to exceed $2,000, and reasonable attorney fees for each disputed claim. R.S. 23:1201 F; Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885. However, penalties and attorney fees are not assessed if the claim is reasonably controverted or if nonpayment results from conditions over which the employer or insurer had no control. R.S. 23:1201 F(2); Brown v. Texas-LA Cartage, supra; Nowlin v. Breck Const. Co., 30,622 (La.App. 2 Cir. 6/24/98), 715 So.2d 112. A claim is reasonably controverted when the employer or insurer produces factual or medical information of such a nature that it reasonably counters the claimant's evidence. Brown v. Texas-LA Cartage, supra; Nowlin v. Breck Const. Co., supra.[1]
The WCJ imposed penalties and fees because she found that Columbian made "not one shred of investigation" to assess the validity of Ms. Taylor's claim of a knee injury. She reasoned that merely interviewing some co-workers, whom Ms. Taylor said she showed her bruises, would have supported her claim and led to further questioning of the physicians. Further, interviewing Ms. Taylor herself would have shown that she disputed certain portions of Dr. Gavioli's office notes.
In Nowlin v. Breck, supra, this court affirmed an award of penalties and fees when the employer's claims manager testified that she "investigated" the claim, but offered no evidence of what she found; the employer relied strictly on alleged inconsistencies in the medical records. On the record presented, this was not sufficient to reasonably controvert the claim. In the instant case Columbian produced no testimony to show that any sort of investigation was ever conducted or that any information was gathered. In short, Columbian's showing was even less than the employer's showing in Nowlin v. Breck. The WCJ did not abuse her discretion in finding that Columbian's conduct was insufficient to reasonably controvert the claim. This assignment lacks merit.

Denial of SEB
By her first assignment Ms. Taylor contends the WCJ erred in denying her claim for SEB. In support, she cites both Dr. Gavioli's and Dr. Etheredge's opinion that she should avoid squatting, climbing and lifting. She also cites her own testimony that her work at Columbian involved heavy lifting, and her continued complaints of knee and back pain. With this showing, she claims she met the burden of proving she is now unable to earn 90% of her pre-injury wage.
When work-related injuries do not result in total disability, but rather leave the employee unable to earn 90% of her pre-injury wage, the statute authorizes an award of SEB. La. R.S. 23:1221(3). To prevail on an SEB claim, the employee must meet an initial burden of proving, by a preponderance of the evidence, that her work-related injury has resulted in an inability to earn that amount. Banks v. Industrial Roofing & Sheet Metal Inc., 96-2840 (La.7/1/97), 696 So.2d 551; Gilley v. Reeves Deli Mart, 30,355 (La.App. 2 Cir. 4/8/98), 711 So.2d 328. Only after the claimant makes this prima facie showing does the burden shift to the employer to show that employment is generally available within the claimant's physical limitations and in her or the employer's reasonable geographic region. Id. The WCJ's factual findings on a claim for SEB are subject to the manifest error rule. Seal v. Gaylord Container Corp., 97-0688 (La.12/2/97), 704 So.2d 1161; Jackson v. Creger Automotive Co., 29,249 (La.App. 2 *710 Cir. 4/2/97), 691 So.2d 824, writ denied 97-1436 (La.9/26/97), 701 So.2d 984.
At trial, Ms. Taylor candidly admitted the reason she was no longer working was that Columbian closed its plant. Despite some knee and back pain, she could and would have continued her former employment, or similar employment. Dr. Gavioli assigned no disability rating and described Ms. Taylor's current condition as "not really a severe or uncommon problem." Only Dr. Etheredge, who examined her once in preparation for trial, limited her to light duty work. On this evidence, the WCJ was entitled to find that the September 1996 injury did not disable Ms. Taylor from performing her former job or earning at least 90% of her pre-injury wage. This assignment lacks merit.

Offset
By her second assignment Ms. Taylor contests the offset of her medical expenses by hospitalization benefits. Columbian specifically pleaded the offset of R.S. 23:1212:
Payment by a person or entity, other than a direct payment by the employee, of medical expenses that are owed under this Chapter, shall extinguish the claim against the employer or insurer for those medical expenses. * * * If the employee or the employee's spouse actually pay premiums for health insurance, either as direct payments or as itemized deductions from their salaries, then this offset will only apply in the same percentage, if any, that the employer of the employee or the employer of his spouse paid the health insurance premiums.
The WCJ applied a full offset, as though Columbian had paid 100% of the employee's health insurance premiums. Ms. Taylor contests this, urging the employer or insurer must prove "both the entitlement to and the amount of any credit." In support she cites Matthews v. City of Alexandria, 92-1784 (La.5/24/93), 619 So.2d 57, Gentile v. Baton Rouge General Med. Center, 95 0348 (La.App. 1 Cir.1995), 665 So.2d 422, and Lee v. Bancroft Bag Inc., 30,820 (La.App. 2 Cir. 8/19/98), 717 So.2d 1230.
Columbian urges in brief that R.S. 23:1212 imposes on the employee the burden of proving that she contributed any portion of the premium. In support it cites Gentile v. Baton Rouge General, supra.
Ms. Taylor's argument has merit. The early cases discussing offset, Matthews v. City of Alexandria, supra, and Cousins v. City of New Orleans, 608 So.2d 978 (La. 1992), actually involved a different statute, R.S. 23:1225 C(1), which provides for a reduction of weekly benefits when the employee also receives Social Security old age benefits "to the extent not funded by the employee" or benefits under disability benefits plans "in the proportion funded by an employer." The Supreme Court interpreted R.S. 23:1225 as placing the burden on the employer or insurer to prove how much of the employee's premiums it paid, in order to obtain the reduction. Subsequent appellate decisions have imposed the same duty under 23:1212. Gentile v. Baton Rouge General, supra; Parfait v. Gulf Island Fabrication Inc., 97 2104 (La.App. 1 Cir. 1/6/99), 733 So.2d 11; see also, Lee v. Bancroft Bag Inc., supra. Columbian's argument that the employee must bear this burden lacks support and is simply wrong.
Considering the similar provisions in Sections 1212 and 1225, there is no reason to apply a different burden of proof; in either instance, the employer or insurer seeking the offset (23:1212) or reduction (23:1225) must prove the entitlement to and amount of any credit. Failure to introduce this evidence is fatal to the offset.
At trial, Ms. Taylor testified that she had hospitalization insurance "through Columbian." Columbian neither cross examined her as to how this was funded, nor introduced any testimony or documentation to show how much the employer contributed to the premiums. Without such *711 proof, the claim for offset must fail. The judgment will be amended to remove the offset and award all medical expenses.

Conclusion
For the reasons expressed, the judgment amended to award Ms. Taylor necessary medical expenses of $2,486.00, together with legal interest thereon from date of judicial demand until paid. In all other respects, the judgment is affirmed. Costs are assessed to the defendant, Columbian Chemical Co.
AMENDED AND AFFIRMED.
NOTES
[1] 1995 amendments to R.S. 23:1201 and 1201.2 have assigned the standard of "arbitrary and capricious" to cases where the employer or insurer discontinues the payment of benefits. Brown v. Texas-LA Cartage, supra; Williams v. Rush Masonry Inc., 98-2271 (La.6/29/99), 737 So.2d 41; Balsamo v. Jones, 28,885 (La.App. 2 Cir. 12/11/96), 685 So.2d 1140, fn. 3. It therefore does not apply to the instant case.