# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 05-575


**ADRIAN BROUSSARD**

**VERSUS**

**LAFAYETTE PARISH SCHOOL BOARD**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 03-05991
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***


## JOHN D. SAUNDERS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***


Court composed of John D. Saunders, Michael G. Sullivan, and J. David Painter, Judges.

**AFFIRMED IN PART; REVERSED IN PART.**

**Dawn L. Morris**
**Preis, Kraft & Roy**
**P. O. Drawer 94-C**
**Lafayette, LA 70509**
**(337) 237-6062**
**Counsel for Defendant/Appellant:**
**Lafayette Parish School Board**

**Richard E. Smith**
**The Glenn Armentor Law Corporation**
**300 Stewart St.**
**Lafayette, LA 70501**
**(337) 233-1471**
**Counsel for Plaintiff/Appellee:**
**Adrian Broussard**

**SAUNDERS, Judge.**

This is a workers' compensation case. Claimant Adrian Broussard was injured on August 13, 2001 while employed as a custodian with the Lafayette Parish School Board. The workers' compensation judge held that Claimant was entitled to supplemental earnings benefits (SEBs) from the date of the accident. The court further held that Appellant, Lafayette Parish School Board, provided Claimant with "sham" rehabilitation. Claimant was awarded $2,000.00 in penalties for improper conversion of his temporary total disability (TTD) benefits to supplemental earnings benefits (SEBs) and $2,000.00 for providing inadequate rehabilitation. In addition, attorney fees in the amount of $8,500.00 were awarded to Claimant.

## FACTS AND PROCEDURAL HISTORY

Claimant, Adrian Broussard, a custodian employed by the Lafayette Parish School Board, injured his lower back on or about August 13, 2001 while moving furniture and weight equipment at Edgar Martin School. Initially, Mr. Broussard was evaluated at the emergency room at Medical Center of Southwest Louisiana. He was then referred to Dr. J. Hugh Larriviere, who treated him conservatively. Dr. Larriviere ordered an MRI of the lumbar spine due to Mr. Broussard's continued complaints of pain. The MRI showed disc bulges at L3-4, L4-5, L5-S1 with associated spinal stenosis. Subsequently, Dr. Larriviere referred Mr. Broussard to neurosurgeon, Dr. Ricardo Leoni, who, in turn, referred him to orthopedic surgeon, Dr. John P. Schutte.

On December 12, 2001, Dr. Leoni and Dr. Schutte performed a laminectomy and posterior fusion of three of the affected levels. Nearly two months after the surgery, on February 7, 2001, Dr. Leoni released Mr. Broussard from his care to be seen on an as-needed basis only. On July 9, 2002, Dr. Schutte released Mr. Broussard

to light duty work with restrictions. At this time, Dr. Schutte found him to be at maximum medical improvement and turned his care over to Dr. Gerald Nickerson for pain management and work hardening.

Licensed physical therapist, Craig Broussard, attempted to perform a functional capacity examination of Mr. Broussard on August 8, 2002. However, Mr. Broussard terminated the testing early, fearing he would re-injure his back. Therefore, the examination results were inconclusive. On August 15, 2002, Dr. Nickerson found Mr. Broussard to be at maximum medical improvement and released him to light duty work to be increased to medium duty work as tolerated. He further concluded that Mr. Broussard needed vocational rehabilitation.

The licensed vocational rehabilitation counselor assigned to Mr. Broussard's case was Ms. Karen Herron, an employee at F.A. Richard & Associates. On September 10, 2002, Ms. Herron met with Mr. Broussard and conducted an interview. She met with him again on October 22, 2002 to administer reading, arithmetic, and intelligence tests. Based on the results of the tests, she found that Mr. Broussard read at a fifth grade level, had third grade level math skills, and was "borderline mentally handicapped." At no time thereafter did Ms. Herron meet with Mr. Broussard in person, nor did she speak with him on the telephone.

In order to find a job for Mr. Broussard, Ms. Herron conducted a labor market survey on January 15, 2003 and located four potential job opportunities for him. The first was a position as a retail sales person with Cingular Wireless in the Mall of Acadiana. The sales representative would assist new and existing customers with the purchase of wireless equipment and services. The second job position was as a driver for a glass company. The third position Ms. Herron located was as a fuel desk

2

customer service representative. The job description included assisting in completing cash transactions for gas and other purchases. The final job located by Ms. Herron was the position of armed security guard and driver for Intertrust. The next day, Ms. Herron sent Mr. Broussard a letter advising him of these available positions. The same day, she sent a letter to Dr. Nickerson outlining the positions and requesting his approval. Two weeks later, Dr. Nickerson's office approved the job as a security guard at Intertrust, the cashier position, and the Cingular Wireless job. After receiving the approval, Ms. Herron sent Mr. Broussard a letter informing him that the jobs had been approved by Dr. Nickerson and that his workers' compensation benefits would be reduced based on the potential earnings capacity in the area.

On February 3, 2003, Mr. Broussard's TTD benefits were converted to SEB benefits. Adjuster, Aaron Johnston, calculated the SEB rate to be $92.33, based on a pre-accident average weekly wage of $418.49, considering a $7.00 an hour earning capacity. On February 26, 2003, Mr. Broussard disputed the conversion of his benefits from TTD benefits to SEBs, as none of the jobs proposed by Ms. Herron were available when he inquired about them. Subsequently, on March 24, 2003, Mr. Broussard's benefits were re-classified to TTD benefits retroactive to February 3, 2003, the date they had originally been converted.

Ms. Herron re-opened Mr. Broussard's file and again began performing labor market surveys on April 30, 2003. However, she did not meet with or speak to Mr. Broussard concerning his vocational rehabilitation. On June 2, 2003, she located a position as a telephone operator through Louisiana Works. The next day, she wrote to Mr. Broussard advising him of the position. At the same time, she wrote to Dr. Nickerson, requesting his approval of the position. On June 10, 2003, Dr. Nickerson

3

returned the form, however, he did not indicate whether Mr. Broussard was capable of the job. Based on the June 2, 2003 survey, Aaron Johnston reclassified the SEBs at the rate of $138.99 a week.

On July 29, 2003, Ms. Herron advised Mr. Broussard of several other positions that she had located. One was a job opportunity as a security guard at a mental health clinic. She also found a cashier position at a local convenience store as well as a position as a delivery driver for Camellia Cleaners. Ms. Herron did not seek approval for any of these positions, as she believed them to be similar in nature to the positions she had previously gotten approved by Dr. Nickerson in January.

On August 18, 2003, Claimant filed a disputed claim for compensation. The trial was held on June 23, 2004. The case was taken under advisement, and on December 7, 2004, oral reasons for judgment were assigned. The trial court ruled that Claimant was entitled to SEBs at the rate of $278.99 per week beginning August 14, 2001, the date after the work-related injury. The court held that Mr. Broussard was entitled to penalties in the amount of $2,000.00 for Lafayette Parish School Board's failure to provide adequate vocational rehabilitation. The court further held that Mr. Broussard was entitled to penalties of $2,000.00 for Lafayette Parish School Board's unreasonable conversion of benefits from TTD benefits to SEBs. Additionally, the court found that Claimant was entitled to reasonable attorney fees in the amount of $8,500.00. The judgment was signed on January 18, 2005. Lafayette Parish School Board now appeals from said judgment.

**ASSIGNMENTS OF ERROR**

1) The trial court erred in ruling that SEBs were due to plaintiff retroactive to the date after the work-related accident.

2) The trial court erred in ruling that plaintiff was entitled to SEBs based on a rate of zero.

3) The trial court erred in ruling that the School Board provided "sham" rehabilitation.

4) The trial court erred in awarding $2,000.00 in penalties for the provision of inadequate rehabilitation.

5) The trial court erred in awarding $2,000.00 in penalties for the improper conversion of TTDs to SEBs.

6) The trial court erred in awarding $8,500.00 in attorney fees.

7) The trial court erred in applying the "reasonably controverted" standard rather than the "arbitrary and capricious" standard.

8) The trial court erred in applying La.R.S. 23:1201, or, alternatively, erred in awarding penalties under La.R.S. 23:1201.2.

**STANDARD OF REVIEW**

In workers' compensation cases, the factual findings of the trial court are subject to the manifest error standard of review. *Smith v. La. Dep't of Corrs.*, 93-1305(La. 2/28/94), 633 So.2d 129; *Freeman v. Poulan/Weed Eater*, 93-1530, pp.4-5 (La. 1/14/94), 630 So.2d 733. In applying the standard, the appellate court must not determine whether the trier of fact's conclusion was right or wrong, but that it was reasonable. *Id*; *Stobart v. State*, 617 So.2d 880 (La.1993); *Mart v. Hill*, 505 So.2d 1120 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous. *Stobart*, 617 So.2d at 880. Therefore, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

5

**LAW AND ANALYSIS**

**Assignment of Error 1: The trial court erred in ruling that SEBs were due to plaintiff retroactive to the date after the work-related accident.**

Appellant agrees that Claimant is entitled to SEBs. However, it is appealing the date the SEBs were first due. The trial court awarded Claimant SEBs retroactive to August 14, 2001, the day after the accident. Appellant paid TTD benefits to Claimant while he was temporarily disabled from any work. In order for a claimant in a workers' compensation case to receive benefits for temporary total disability, he must prove by clear and convincing evidence that he is physically unable to engage in any employment or self-employment due to his injury. *Veazie v. Gilchrist Const. Co.*, 04-118 (La. App. 3 Cir. 6/2/04), 878 So.2d 742, *writ denied*, 04-1692 (La. 10/8/04), 883 So.2d 1018. In order for a claimant to establish by clear and convincing evidence that he is unable to engage in any type of employment, he must introduce objective medical evidence. *Ratliff v. Brice Bldg. Co.*, 03-624 (La. App. 5 Cir. 11/12/03), 861 So.2d 613.

In this case, there is no dispute that Mr. Broussard injured himself during the course and scope of his employment with the Lafayette Parish School Board. Claimant's injury required him to undergo back surgery on December 12, 2001, leaving him temporarily disabled from any kind of work. On February 7, 2002, his neurosurgeon, Dr. Leoni released him, stating, "[f]rom my standpoint, I will see him back as needed and I will leave his final disposition up to Dr. Nickerson and Dr. Schutte."

Dr. Schutte, an orthopedic surgeon, determined that Mr. Broussard had reached maximum medical improvement on July 9, 2002, and could return to light duty work. He then referred Mr. Broussard to Dr. Nickerson for pain management. On January

6

23, 2003, Dr. Nickerson determined, from a physiatric point of view, that Mr. Broussard could physically return to work as a cashier, cellular service representative, or a security guard.

Appellant argues that the trial court erred in awarding Claimant SEBs from the date of the accident. In Claimant's reply brief to this court, he asserts that he is entitled to TTD benefits from August 13, 2001 through January 22, 2003, and SEBs from January 23, 2003 through the time of trial and continuing. We find this award of the trial court to be an inadvertence. We believe that the trial court was simply attempting to ensure that Claimant was awarded all SEBs owed to him from the time of the accident that may not have been paid by Appellant. However, if SEBs were awarded to Claimant from the date of the accident, the result would be double recovery for the Claimant, which would amount to reversible error. Claimant is correct in asserting that he was entitled to SEBs beginning January 23, 2003, as TTD benefits are proper only when a claimant is unable to engage in any self-employment or occupation for wages. *Vermilion Parish Police Jury v. Williams*, 02-12 (La. App. 3 Cir. 7/3/02), 824 So.2d 466. Once an injured employee reaches maximum medical improvement, and he is able to return to work, he is no longer eligible for TTD benefits. *Id*. In this case, all of Mr. Broussard's treating physicians had found him at maximum medical improvement and had released him to light duty work. Instead, he may recover SEBs. An employee is entitled to SEBs where he is unable to earn 90% or more of his pre-injury wage. La.R.S. 23:1221(3)(a). It is undisputed that Mr. Broussard is unable to earn 90% or more of his pre-injury wage. Therefore, we agree with Claimant's position that he was entitled to TTD benefits from August 13, 2001 through January 22, 2003, and SEBs from January 23, 2003 through the time of trial

7

of and continuing. Accordingly, we find that the trial court inadvertently erred in awarding Claimant SEBs from the date of the accident.

**Assignment of Error No. 2: The trial court erred in ruling that plaintiff was entitled to SEBs based on a rate of zero.**

In its second assignment of error, Appellant argues that the trial court erred in ruling that Claimant was entitled to SEBs based on a rate of zero. As stated earlier, in order to be entitled to receive supplemental earnings benefits, a claimant must prove by a preponderance of the evidence that he is unable to earn wages equal to 90% or more of the wages he earned before the accident. La.R.S. 23:1221(3)(a). In this case, Mr. Broussard earned an average weekly wage of $418.49 per week with a compensation rate of $278.99 per week. Once the claimant proves this, the burden shifts to the employer to prove that the employee is physically able to perform a certain job, that the job was offered to the employee, or that it was available, and that it was in the employee's or employer's community or reasonable geographic region. La.R.S. 23:1221(3)(c)(i); *Daigle v. Sherwin-Williams Co.*, 545 So.2d 1005 (La.1989).

The Louisiana Supreme Court established the minimum burden for employers to prove job availability in *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551. An employer may meet its burden of proof by providing competent evidence of:

> 1. the existence of a suitable job within the claimant's physical capabilities and within claimant's or employer's community or reasonable geographic region;
>
> 2. the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and
>
> 3. an actual position available for that particular job at the time that the claimant received notification of the job's existence.

8

*Id.* at 557.

The court further explained:

> By "suitable jobs", we mean a job that claimant is not only physically capable of performing, but one that also falls within the limits of claimant's age, experience, and education, unless, of course, the employer or potential employer is willing to provide any additional training or education.

*Id.*

Appellant argues that it provided "competent evidence" of the above minimum requirements, stating that a claimant need not be particularly suited for a post-injury job; he need only be capable of performing it. Clearly, Mr. Broussard was not capable of performing any of the jobs identified by Ms. Herron. Mr. Broussard read on a fifth grade level, performed arithmetic on a third grade level, and was "borderline mentally challenged". Obviously, with his mathematics skills, it would have been difficult for Mr. Broussard to complete cash sales as a cashier or to assist customers with wireless service and sales at Cingular. In addition, none of the jobs provided by Ms. Herron made reference to the standing or sitting requirements, even though she testified that she knew standing and sitting were particularly difficult for Mr. Broussard. She also never took into account that Mr. Broussard was taking medication that could impair his mental and physical faculties, although Dr. Nickerson took great strides to warn everyone involved about the effects of the medication. However, Ms. Herron suggested positions such as armed guard and driver.

In *Pinkins v. Cardinal Wholesale Supply, Inc.,* 619 So.2d 52 (La.1993), the Louisiana Supreme Court stated that we should consider a totality of factors to determine a realistic appraisal of access to employment. The factors include work-related disability, age, literacy level, race, and the claimant's overall ability to perform.

9

*Id.* The employer must consider all factors that limit the employee's real access to the job market. *Id.* Appellant did not show any credible evidence that Mr. Broussard could have returned to any position thus far. Although Ms. Herron identified jobs that were shown to be available through the Louisiana Department of Labor Louisiana Works computer systems, she never contacted the employer directly to verify that the jobs were available. When Mr. Broussard applied for the position of cashier, identified as Job Service Office No. 72067 in January of 2003, he was told the position had already been filled.

Further, once the positions were approved by Dr. Nickerson, Ms. Herron did not contact the employer to ensure that the positions were still available. Again, Mr. Broussard attempted to apply for employment, yet was told that the position was no longer available. Therefore, we find that Appellant has not shown that any potential job was available to Mr. Broussard.

Appellant has also failed to show that Mr. Broussard was physically and mentally able to perform any of the jobs identified. Ms. Herron admitted during cross-examination that no steps were taken to determine the physical requirements of the jobs identified, even though she knew that standing and sitting for long periods of time were particularly difficult for Mr. Broussard. Appellant argues that all of the positions identified by Ms. Herron were approved by Dr. Nickerson. However, Ms. Herron never advised Dr. Nickerson, or any potential employers that Mr. Broussard was "borderline mentally challenged".

Additionally, Mr. Broussard was prescribed medications that Dr. Nickerson specifically stated could impair his mental and physical capabilities. Ms. Herron did

10

not inquire whether he could safely perform the job requirements while under the influence of the prescribed medication. Several of the identified job opportunities required Mr. Broussard to drive for a substantial part of the day. Dr. Nickerson's report specifically admonished Mr. Broussard not to drive while taking the medications. Clearly, it was not appropriate for Mr. Broussard to be driving, much less, carrying a loaded weapon while under the influence of the prescribed medications.

Ms. Herron identified another job opportunity as a cellular telephone representative who "would be expected to advise customers on rate plans, suggesting selections that meet customers' needs, emphasizing selling points of articles, such as quality and utility, preparing sales slips, preparing and explaining sales contracts, receiving payment and obtaining credit authorizations". Obviously, this job, as well as the others identified by Ms. Herron, are not "suitable" for Mr. Broussard, considering his mental and physical abilities.

Mr. Broussard proved his inability to earn 90% of his pre-injury wages. Appellant, on the other hand, fell short of proving that he was physically able to perform a certain job and that the job was offered or available to him. The amount of SEBs is based on the difference between the average weekly wage earned by the employee before the accident and the employee's earning capacity after the accident. La.R.S. 23:1221(3)(a). We find that the trial court was correct in finding that Adrian Broussard was entitled to SEBs based upon zero, as none of the positions identified by Ms. Herron were suitable.

**Assignment of Error No. 3: The trial court erred in ruling that the School Board provided "sham" rehabilitation.**

11

In its third assignment of error, Appellant argues that the trial court erred in ruling that the School Board provided "sham" rehabilitation. The Standards and Ethics Handbook issued by the Board of Examiners for licensed professional vocational rehabilitation counselors recognizes the need to assess the client's education and training, as a part of the first step in the process of evaluation. Section B(7) requires the determination of the client's interests, reading skills, intelligence, academic achievement, primary aptitude, and transferable skills. *Maxie v. Brown Indus., Inc.*, 95-19 (La.App. 3 Cir. 5/31/95), 657 So.2d 947, *writ denied*, 95-1630 (La. 10/6/95), 661 So.2d 469.. Appellees counter, stating that although Ms. Herron determined the client's skills and aptitude, she ignored the physical, mental, and educational limitations of Mr. Broussard. We agree. When identifying available positions for Mr. Broussard, Ms. Herron never inquired into the physical demands of the job, although she had reviewed Mr. Broussard's medical records and knew that he had trouble sitting or standing for extended periods of time. Further, she knew that he was taking prescription medication that could impair his mental and physical capabilities, yet she neglected to take that into account when identifying jobs for him. She administered the basic skills test to determine Mr. Broussard's capabilities in the areas of reading, writing, and arithmetic and found him to be "borderline mentally challenged". However, she identified jobs in which he would have to make cash transactions and explain wireless contracts to customers.

The trial court found that Appellant provided "sham" rehabilitation to Mr. Broussard. Based on the evidence in the record, we do not find this ruling to be erroneous. Accordingly, we affirm the finding of the trial court.

**Assignment of Error Nos. 4, 5, 6, 7, and 8: Penalties and Attorney Fees**
**The trial court erred in awarding $2,000.00 in penalties for the provision of inadequate rehabilitation.**

Appellant urges that the trial court erred in awarding $2,000.00 in penalties for the provision of inadequate rehabilitation. The award of penalties and attorney fees will not be disturbed upon appeal absent manifest error. *Comeaux v. Grey Wolf Drilling*, 93-1289 (La.App. 3 Cir. 5/4/94), 640 So.2d 532, *writ denied,* 94-1339 (La. 9/16/94), 642 So.2d 193. Under La.R.S. 23:1201 and La.R.S. 23:1201.2[1], a workers' compensation claimant is entitled to penalties and attorney fees if his employer withholds or terminates his benefits arbitrarily, capriciously, or without probable cause. In order to avoid the imposition of penalties and attorney fees, the employer must reasonably controvert the employee's right to compensation. La.R.S. 23:1201(F).

The two statutes relevant to the imposition of penalties and attorney fees are La.R.S. 23:1201 and 23:1201.2. The Louisiana Supreme Court has distinguished the two statutes in *Williams v. Rush Masonry, Inc.*, 98-2271 (La. 6/29/99), 737 So.2d 41. The court explained that penalties are assessed under La.R.S. 23:1201 for the untimely payment of benefits, whereas penalties for the arbitrary and capricious discontinuance of payment of benefits are assessed under La.R.S. 23:1201.2. *Id.*

Appellant argues that in matters arising after the 1995 amendments, but prior to the 2003 repeal of Section 1201.2, Section 1201.2 does not apply to provide attorney

---

[1]La.R.S. 23:1201.2 was repealed by Act 2003, no.1204 §2, which went into effect August 15, 2003. The substance of former La.R.S. 23:1201.2 is now found in La.R.S 1201(F), (I), and (J).

fees for failure to provide vocational rehabilitation. In a footnote in *Maynard v. Grey Wolf Drilling*, 04-431 (La.App. 3 Cir. 10/20/04) 885 So.2d 1277, the court stated:

> The workers' compensation judge referenced the failure to provide appropriate vocational rehabilitation as a possible basis for awarding attorney's fees. Although the supreme court has found attorney's fees appropriate in cases involving an improper *discontinuation* of vocational rehabilitation, *see Haynes v. Williams Fence and Aluminum*, 02-442 (La. 4/21/03), 851 So.2d 917 (wherein the supreme court explained that vocational rehabilitation is a "claim due" under then existing La.R.S. 1201.2), the supreme court subsequently found that an award of penalties or attorney's fees for failure to *provide* rehabilitation is not available under La.R.S. 23:1201(F). *See Chelette v. Riverwood Intern. USA Inc.*, 03-1483 (La. 10/17/03), 858 So.2d 412.
>
> Note, however, that subsequent to *Chelette*, La.R.S. 1201.2 was repealed pursuant to 2003 La. Acts No. 1204, §2. Pursuant to the same Act, La.R.S. 23:1201 was amended to provide for penalties and attorney's fees for failure to pay "claims due." The subsequent amendment is inapplicable to the present case, however, as the law in effect at the time of the violation is the law applicable to the issue of penalties and attorney's fees. *See Skipper v. Acadian Oaks Hosp.*, 00-67 (La.App. 3 Cir. 5/3/00), 762 So.2d 122. Thus, although we have concluded that the award of attorney's fees for violations of La.R.S. 23:1201 was not an abuse of discretion, the failure to provide appropriate rehabilitation is not one of those which we have considered to be a suitable basis for the award.

*Id.* at 1289.

Appellant argues that because Claimant's TTD benefits were converted to SEBs on July 9, 2003, and because Section 1201.2 was repealed by an Act that went into effect on August 15, 2003, the 1995 version of Section 1201.2 applies in this case, and Claimant cannot recover penalties or attorney fees. Appellant contends that Section 1201.2 does not permit the award of penalties in matters regarding the reduction or discontinuance of benefits.

14

Appellees, on the other hand, argue that where a claimant receives deficient rehabilitative efforts and inadequate assessment of capabilities, he is entitled to statutory penalties and attorney fees. They cite two cases, *Maxie* 657 So.2d 448, and *Hopes v. Dotmar Industries,* 627 So.2d 676 (La.App. 3 Cir. 1993), to support their position. In both cases, the claimant was awarded penalties and attorney fees for insufficient rehabilitation and subsequent termination of benefits. However, in *Maxie* and *Hopes*, neither of the claimants was awarded separate penalties and attorney fees for insufficient rehabilitation. We find that the *Maynard* case is controlling and that the trial court erred in awarding penalties for insufficient rehabilitation. Accordingly, we reverse the decision of the trial court in its imposition of penalties against Appellant for the provision of improper rehabilitation.

**Assignment of error no. 5: The trial court erred in awarding $2,000.00 in penalties for the improper conversion of TTDs to SEBs.**

The trial court awarded Claimant penalties for Appellant's improper conversion of TTD benefits to SEBs. An employer may only reduce an employee's temporary total benefits to supplemental earnings benefits when the employee is released by his treating physician. La.R.S. 23:1201; 23:1201.1. Claimant's TTDs were converted to SEBs first on February 3, 2003. However, the SEBs were converted back to TTDs when Mr. Broussard informed Ms. Herron that none of the positions identified were available. The TTDs were permanently re-classified to SEBs on July 9, 2003. Claimant admits that his TTDs should have been converted to SEBs as of January 23, 2003, the date his physicians released him to light-duty work. Therefore, his TTDs were permanently reduced to SEBs six months after Mr. Broussard was released by

15

his treating physicians. Therefore, Appellant argues that the trial court erred in awarding penalties for the improper conversion of TTDs to SEBs.

However, Appellant re-classified Mr. Broussard's benefits based on unsuitable and unavailable jobs. Under La.R.S. 1201.2, an employee may recover penalties and attorney fees if an employer discontinues his benefits arbitrarily, capriciously, or without probable cause. Appellant argues that it did not act arbitrarily and capriciously in its reduction of Claimant's benefits, as he was released to work six months before his benefits were re-classified. The trial court found that Claimant was not capable of performing any of the jobs provided to him. We find that Appellant was arbitrary and capricious in its re-classification and calculation of Claimant's benefits. Accordingly, we do not find that the trial court erred in assessing penalties to Appellant for the improper reduction of benefits. Accordingly, we affirm the decision of the trial court.

**Assignment of Error No. 6: The trial court erred in awarding $8,500.00 in attorney fees.**

Appellant argues that the award of attorney fees must be reversed, as Claimant did not prove that the it was arbitrary, capricious or that it acted without probable cause in reducing Claimant's benefits. Appellant claims that it was up to the Claimant to prove that they took "willful and unreasoning action, without consideration and regard for the facts and circumstances presented, or of seemingly unfounded motivation" in converting Claimant's TTD benefits to SEBs. The imposition of attorney fees by the trial court is a question of fact and is subject to the manifest error standard of review. Given the evidence in the record that Appellant provided Claimant with "sham" rehabilitation and improperly reduced his benefits, calculating

16

them based upon unsuitable and unavailable job positions, we do not find that the trial court committed manifest error in awarding attorney fees to Claimant. Accordingly, this assignment of error has no merit.

**Assignment of Error No. 7: The trial court erred in applying the "reasonably controverted" standard rather than the "arbitrary and capricious" standard.**

Appellant argues that the trial court erred in applying the "reasonably controverted" standard rather than the "arbitrary and capricious" standard in determining whether its actions warranted the imposition of attorney's fees. The relevant statute to this case is La.R.S. 23:1201.2, which stated that in order to recover penalties and attorney fees, an employee must prove that his employer acted "arbitrarily, capriciously, and without probable cause in discontinuing the payment of compensation and medical benefits . . ." *Williams*, 737 So.2d at 45. Therefore, we find that the trial court erred in applying the "reasonably controverted" standard. Appellant did not provide Mr. Broussard with any suitable job opportunities and reduced and recalculated his disability benefits based on these clearly unsuitable positions. Accordingly, we find this error to be harmless, as we find the actions of Appellant to rise to the level of being arbitrary and capricious.

**Assignment of Error No. 8: The trial court erred in applying La.R.S. 23:1201, or, alternatively, erred in awarding penalties under La.R.S. 23:1201.2.**

Appellant asserts that the trial court erred in its application of La.R.S.23:1201 rather than La.R.S. 23:1201.2. As stated earlier, the applicable statute is La.R.S. 1201.2 dealing with the discontinuance of payment of claims due. *Williams,* 737 So.2d at 41. We find that the trial court erred in applying 23:1201 to the instant case. Louisiana Revised Statute 23:1201 applies when an employer fails to commence

payment of benefits. *Chelette v. Riverwood Intern. USA, Inc.*, 03-1483 (La. 10/17/03), 858 So.2d 412. However, the record does show that there was an improper discontinuance or reduction of Claimant's benefits by Appellant. Therefore, La.R.S. 23:1201.2 is applicable. Having determined that Appellant's actions rise to the level of "arbitrary and capricious," we do not find that the trial court erred in awarding penalties to Claimant under La.R.S. 23:1201.2.

**CONCLUSION**

We find that the trial court inadvertently erred in awarding Claimant SEBs from the date of the accident , August 13, 2001, and should have awarded them from January 23, 2003. We affirm the ruling of the trial court that Claimant is entitled to SEBs based upon zero. We find that the trial court did not err in its finding that Appellant provided "sham" rehabilitation to Claimant. Further, we hold that the trial court erred in awarding $2,000.00 in penalties for the provision of inadequate rehabilitation. We affirm the award of $2,000.00 in penalties for the improper conversion of TTD benefits to SEBs and the award of $8,500.00 in attorney fees to Claimant. Additionally, we find that the trial court erred in applying La.R.S. 23:1201 and the "reasonably controverted" standard to this case. However, we find these errors to be harmless, as the applicable statute is La.R.S. 23:1201.2 and actions of Appellant rise to the level of being arbitrary and capricious. Therefore, penalties may be assessed under La.R.S. 23:1201.2. The judgment of the trial court is affirmed in part and reversed in part. Costs of the appeal are assessed against Appellant.

**AFFIRMED IN PART; REVERSED IN PART.**