STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

12-652

PATRICK GLEASON

VERSUS

LAFAYETTE GENERAL MEDICAL CENTER

**********

ON REHEARING FROM THE APPEAL
FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 4
PARISH OF LAFAYETTE, NO. 10-06134
ADAM JOHNSON, WORKERS' COMPENSATION JUDGE

**********

**SYLVIA R. COOKS**
**JUDGE**

**********

Court composed of Sylvia R. Cooks,  James T. Genovese, Shannon J. Gremillion, Phyllis M. Keaty and John E. Conery.

AFFIRMED AND JUDGMENT RENDERED.

Cooks, J., concurs and assigns written reasons.

Gremillion, J., dissents for the reasons set forth in the original opinion of this court written by Judge Decuir and dated December 12, 2012.

Genovese, J., dissents for the reasons set forth in the original opinion of this court by Judge Oswald A. Decuir dated December 12. 2012.

**Graham N. Smith**
**Onebane Law Firm (APC)**
**P.O. Box 3507**
**Lafayette, LA 70502-3507**
**(337) 237-2660**
**COUNSEL FOR DEFENDANT AS APPELLANT AND APPELLEE:**
    **Lafayette General Medical Center**


**Richard E. Smith**
**Attorney at Law**
**600 Jefferson Street, Suite 404**
**Lafayette, LA  70501**
**(337) 354-3015**
**COUNSEL FOR PLAINTIFF AS APPELLANT AND APPELLEE:**
    **Patrick Gleason**

**COOKS, Judge**.

### FACTS

Patrick Gleason (Gleason) injured his right shoulder on July 23, 2007, while employed by Lafayette General Medical Center (LGMC). The parties stipulated that LGMC was self-insured pursuant to the Workers' Compensation Act at the time of Gleason's injury. Gleason continued to work with restrictions until he underwent surgery on May 8, 2008. He returned to work on June 4, 2008. Gleason received Temporary Total Disability (TTD) benefits for that time period. On January 21, 2009, Gleason underwent a second arthroscopic surgery on his right shoulder. He was again paid TTD benefits until he returned to work on March 9, 2009, with a forty pound lift restriction ordered by Dr. Michael Duval (Dr. Duval), his treating orthopedic surgeon. Gleason continued to work under that restriction and continued under Dr. Duval's care. On May 13, 2010, Gleason submitted a letter of resignation to LGMC giving advance notice of his departure stating he desired "to return to the restaurant industry for growth and experience" and "to pursue career objectives." He also indicated his last day of work with LGMC would be May 27, 2010. Gleason had applied for a job as an executive chef in a restaurant with a new employer hoping to secure work better suited to his physical limitations which resulted from his on-the-job injury at LGMC. At the time Gleason submitted his letter of resignation to LGMC he had accepted the new job conditioned on passing a drug screen. Because the drug screen indicated Gleason was taking prescription medications which were prescribed for his pain by his treating physician, the new employer refused to hire him. On May 18, 2010, nine days before his intended date of departure from LGMC's employ, Gleason

attempted to rescind his letter of resignation with LGMC but they refused to do so, and instead, made his resignation effective immediately.

On June 8, 2010, Dr. Duval determined Gleason was unable to work pending further diagnostic testing to determine his current condition and future course of treatment. LGMC refused to pay Gleason any further benefits, including the medical diagnostic testing requested by Dr. Duval, solely on the basis that he was no longer their employee. The parties stipulated that Gleason has not been released in any capacity to return to work by any physician since June 8, 2010.

Gleason first filed a claim for TTD benefits which the Workers' Compensation Judge (WCJ) found was prescribed. Before trial, the parties reached a stipulated agreement resolving "the medical claims presented in this Dispute" acknowledging that such claims were no longer before the court. Gleason amended his claim, seeking Supplemental Earnings Benefits (SEB) plus penalties and attorney fees. The WCJ granted Gleason SEB with a zero base from June 28, 2010, but denied his request for attorney fees and penalties. Both parties appealed. Gleason seeks additional attorney fees on appeal and on rehearing.

This case was originally heard before a three judge panel of this court in *Patrick Gleason v. Lafayette General Medical Center*, 12-652, (La.App. 3 Cir. 12/12/12), ___ So.3d____, which affirmed the trial court's finding that Gleason was not entitled to TTD benefits because that claim was prescribed. On application for rehearing this part of the court's ruling was not raised as an issue for consideration. However, Gleason, on rehearing, takes issue with this court's ruling reversing the WCJ's award of SEB and affirming the WCJ's denial of attorney fees and penalties. For the reasons stated below we now affirm the WCJ's

award of SEB with a zero base commencing June 8, 2010,[1] and award attorney fees on appeal and assess all costs of this appeal against LGMC.

## LEGAL ANALYSIS

The employer's affirmative defense in this case is that at the time Gleason voluntarily resigned from LGMC there was available work for him which satisfied any workplace restriction then imposed by his treating physician. LGMC offered no proof of this assertion but instead argued that Gleason is not entitled to SEB because his disability (which the parties stipulated resulted from an on-the-job injury while employed by LGMC) occurred three weeks after his last day as its employee. In other words, LGMC asserts Gleason could earn 90% of his pre-injury wages at the time he voluntarily quit the job because he was earning that when he left their employ. LGMC argues that if an employee voluntarily leaves a job paying him better than 90% of his pre-employment wages, and **later becomes disabled,** he is out of luck. Their conclusion is based on some sort of "timing" requirement that this court cannot find in Louisiana's workers' compensation statutes. The only relevant time issue in this case is whether the SEB claim was filed within three years from the date of the last payment of benefits, which occurred in this case on March 9, 2009. No one disputes that the SEB claim was filed timely. Resignation from a job is not the relevant issue here; and, resignation alone can never be used to deny a claimant benefits. It is also irrelevant that Gleason worked for fourteen months and earned more than 90% of his pre-injury wages. The only time "resignation," which the courts often equate with the term retirement, becomes significant is when an employer asserts the employee has

---

[1] The parties entered a joint stipulation stating in pertinent part "that Patrick Gleason would not be entitled to Supplemental Earnings Benefits (SEB) at any time before June 8, 2010."

3

permanently left the workforce; and thus, the employer is relying on R.S.23:1221(3)(d)(iii) to escape payment of the full 520 weeks of SEB as opposed to only 104 weeks.

A worker is not bound to remain with a particular employer, as LGMC urges here. He is free to leave a job and seek another. If later it is medically determined that he in fact is not able to earn 90% of his pre-injury employment wages in the *open employment market* he is entitled to SEB if he is not actually working. *See Breaux v. City of New Orleans*, 97-273 (La.App. 4 Cir. 8/27/97), 699 So.2d 482, *writ denied*, 97-2491 (La.12/19/97), 706 So.2d 454, and the cases cited therein. Gleason provided proof of such medical determination, and LGMC failed to offer any contradictory evidence. In fact, LGMC stipulated that "[o]n June 8, 2010, Dr. Michael Duval issued a 'Work Status' saying that PATRICK GLEASON was unable to work 'pending diagnostic testing'" and stipulated that "PATRICK GLEASON has not been released by any physician in any capacity to return to work since June 8, 2010." Gleason further showed he was unemployed and unable to find work suited to his job-related disability, a fact also uncontroverted by LGMC.

In *Kinchen v. City of Shreveport*, 46,490 (La.App. 2 Cir. 9/21/11), 73 So.3d 1011, *writ granted*, 11-2262 (La. 12/12/11), 76 So.3d 1161, a captain with the Shreveport Police Department for twenty-seven years injured her left shoulder on the job in October 2006. She received TTD benefits until she returned to work with restrictions on October 22, 2007. On December 17, 2007, the officer wrote a letter of "retirement" stating: "I am writing this to advise you that, effective January 1, 2008, I will be retiring from the Shreveport Police Department. I have enjoyed my 27 years working for the department but feel it is time for me to pursue

4

my personal interest." At the time of her retirement she had not undergone testing to determine any disability rating. After leaving the department, she worked approximately two months for another employer but she returned to the doctor, and on May 19-20, 2008, she underwent a FCE. She was assigned a disability rating. On September 29, 2008, she filed a disputed claim seeking SEB. The city's affirmative defense was the officer took regular tenure retirement and, as such, had voluntarily withdrawn from the workforce. The city also argued that at the time of her voluntary retirement there was available work for her "that satisfied any putative workplace restriction" imposed by her treating physicians. In other words, she could earn 90% of her pre-injury wages and she had a job with the police department. The city maintained she was not entitled to SEB because she was working and voluntarily quit.

Kinchen's letter indicated she was leaving to pursue "personal interest." At trial she testified that it was because she "did not feel she could perform the duties as a police officer." She testified: "I knew that the basic requirements for the job I could not physically do and as a result this was taxing on me emotionally." She further testified she was restricted from lifting beyond a certain weight, and she "was always in fear [of getting] into a confrontation." She worked for a telemarketing company for two months after leaving the department, and, at the time of trial, she was looking for a job.

The facts of this case are similar to *Kinchen*. In the present case, Gleason's resignation letter expressed his intent to pursue "career objectives" and for growth and experience. The judge specifically notes, in her oral ruling, that Gleason testified "[he] wanted to find a job that was not as intense on his shoulder and this job [he] may have found may have been better for [him]." He also testified: "The

5

job at the hospital got extremely hard to do." Gleason had not worked since leaving the hospital job. The trial judge obviously accepted these facts as credible.

Both Kinchen and Gleason quit their job with the intent to find another job; and, both returned to the doctor after leaving a job where they were earning more than 90% of their pre-injury wages. Kinchen actually got another job for two months; Gleason did not get what he sought because he was taking prescription medication for pain he continued to experience **from his work-related shoulder injury**. *Both employees' full disability status was not determined until after they stopped working for their employer.* The appellate court found Kinchen was entitled to SEB from the police department. We likewise find Gleason is entitled to SEB from LGMC.

There is no dispute that Gleason is now disabled, the disability is related to his work injury, and he cannot earn 90% of his pre-injury wages. The doctor testified to that fact; the judge found it to be so; and it is not disputed by the employer. The thing that apparently disturbs LGMC is the fact that Gleason was working for over a year, and voluntarily resigned his job at LGMC to get another, less physically demanding job in the restaurant industry. But Gleason cannot be denied SEB just because he was earning more than 90% of his pre-injury wages when he left LGMC for a job better suited to his physical limitations. The Louisiana Supreme Court in *L.S. Allen v. The City of Shreveport*, 92-874 (La.5/24/93), 618 So.2d 386, found an employee was still entitled to SEB even though he could return to his former employment which was no longer available to him, as is the case here. The court emphasized: "it is irrelevant whether plaintiff is physically able to perform his former sedentary job that is no longer available. The relevant question is whether plaintiff is partially disabled and whether he is

6

unable to earn ninety percent of the wages he was earning prior to the injury." *Id.* at 388-89.

In other words, the court explained:

> Ironically, plaintiff was physically able to return to his former (but no longer existing) position, but was physically unable to perform the duties of other physically demanding jobs of equal or even lesser pay. But this strange combination of circumstances does not alter the fact that plaintiff on this record was injured on a job of long standing that paid him $12.62 per hour, is partially disabled because of his employment injury, is **presently** unable at least partially because of the disability, to earn 90% of the wages he was earning at the time of his injury. He is therefore entitled to supplemental earnings benefits.

*Id.* at 389 (emphasis added).

Likewise, in *Brown v. Offshore Energy*, 47,392 (La.App. 2 Cir. 8/8/12), 104 So.3d 494, the employee, Leroy Brown, was awarded SEB after the employer fired him, he got another job, and received unemployment benefits. He returned to the doctor and underwent a FCE long after his injury. His disability status was then upgraded. The court found he could not earn 90% of his pre-injury wages. Clearly, even when an employee actually leaves and gets another job, if his prior injury with the first employer ultimately renders him disabled while working for a second employer, the first employer will still have to pay SEB. *See Silverman v. Weatherford International*, 46,402 and 46,403 (La.App. 2 Cir. 10/19/11), 83 So.3d 11, *writ denied*, 12-76 (La. 3/23/12), 85 So.3d 89.

We cannot emphasize better than the supreme court that it is irrelevant when Gleason left the hospital job or even that he left a job he could perform paying 90% of his pre-injury wages. The important fact here is that **presently** he cannot earn 90% of his pre-injury wages, his claim for SEB was timely filed, and the employer failed to rebut this evidence at trial. We therefore affirm the trial court's

7

ruling awarding Gleason SEB with no earning capacity. We also find Gleason is entitled to reasonable attorney fees for this appeal and rehearing.

It is therefore ordered that Defendant Lafayette General Medical Center pay Plaintiff, Patrick Gleason's, reasonable attorney fees on appeal in the amount of $3,000.00.

All costs of this appeal are assessed against LGMC.

**AFFIRMED AND JUDGMENT RENDERED.**

**Cooks, J. Concurs.** I write separately to express that the majority opinion grants Mr. Gleason at least a portion of the relief he is entitled to in accord with Louisiana's Workers' Compensation Law. I believe Mr. Gleason is also entitled to full recovery of his attorney fees at the trial level. Additionally, I believe that no valid basis in law or fact existed to justify Defendant's willful failure to pay benefits as required by the Act. Louisiana Revised Statutes 23:1201(F) provides that an employer or workers' compensation insurer is subject to penalties and attorney fees if it denies benefits without reasonably controverting the claim or if its failure to pay benefits is not a result of conditions over which it has no control. LGMC denied benefits to Gleason, asserting that because Gleason voluntarily resigned his job and was earning full pay before doing so he was not entitled to any further benefits. This rationale has no basis in workers' compensation law. Claimant's inability to work in this case is the result of him experiencing substantial pain, a fact well known to LGMC. We have repeatedly held:

> TTD benefits are proper when the claimant is unable to engage in any self-employment or occupation for wages. Once an injured worker reaches maximum medical improvement and is able to return to work, even in pain, then he is no longer eligible for TTD benefits, but is relegated [entitled] to SEB benefits if he is unable to earn 90% of his pre-accident wages.

8

*Vermilion Parish Police Jury v. Williams*, 02-12, p. 5, (La.App. 3 Cir. 7/3/02), 824 So.2d 466, 470 (citing *Foster v. Liberty Rice Mill*, 96-438 (La.App. 3 Cir. 12/11/96), 690 So.2d 792. *See also Daenen v. The Cajun Landing Rest.*, 04-1193, (La.App. 3 Cir. 4/6/05), 899 So.2d 125, and *Broussard v. Lafayette Parish Sch. Bd.*, 05-575 (La.App. 3 Cir. 4/5/06), 926 So.2d 713, *writ denied* 06-1044, (La. 6/23/06), 930 So.2d 983. LGMC's reason for denying benefits has no basis in the law or jurisprudence and it should not be excused. *See Id. See also Lee v. Kenyan Enterprises*, 06-41,308 (La.App. 2 Cir. 8/23/06), 938 So.2d 1216, relying on our holding in *Foster*, 690 So.2d 792.

LGMC stipulated it was well aware that Gleason's physician declared him unable to work pending further diagnostic testing for which it refused to pay. Although LGMC settled the medical claim in this case on the eve of the hearing, its failure to pay medicals has delayed full assessment of Gleason's future ability to perform work of any kind and he has not been offered any rehabilitation services. *See Kaufman v. Fishery Products of La., Inc.*, 03-523 (La.App. 4 Cir. 10/22/03), 866 So.2d 256, and cases cited therein. LGMC does not, nor can it, assert that its reasons for failing to pay benefits was the result of conditions over which it had no control. I believe Gleason is entitled to penalties and attorney fees below and on appeal for LGMC's willful refusal to timely pay benefits.

9