# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 20-619


**WILLIAM E. YOUNG**

**VERSUS**

**CB&I, LLC & XL SPECIALTY**

**INSURANCE COMPANY**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 18-06519
DIANNE MARIE MAYO, WORKERS COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

**D. KENT SAVOIE**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and D. Kent Savoie, Judges.


**AFFIRMED.**

**Marcus Miller Zimmerman**
**Attorney at Law**
**949 Ryan Street, Suite 110**
**Lake Charles, Louisiana 70601**
**(337) 474-1644**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **William E. Young**

**Matthew D. Crumhorn**
**Rabalais, Unland & Lorio**
**1404 Greengate Drive, #110**
**Covington, Louisiana 70433**
**(985) 893-9900**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **XL Specialty Insurance Company**
    **CB&I**

**SAVOIE, Judge.**

After a trial on the merits, the Workers' Compensation Judge (WCJ) found in favor of Claimant William E. Young, awarding him supplemental earnings benefits (SEBs), temporary total disability (TTD) benefits, reasonable and necessary medical benefits, attorney's fees, and reimbursement of litigation expenses. Defendants CB&I, LLC and XL Specialty Insurance Company now appeal. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On December 14, 2017, William Young was working as an electrician for CB&I, LLC, when a workplace accident occurred. Young was on a scaffold when his right knee struck a scaffolding pole. He fell forward while his right foot remained stuck, hyperextending his right knee. After the accident, Young continued to work for CB&I, LLC in a modified capacity until April 12, 2018. During that time, CB&I, LLC paid medical benefits to Young. Young contends that CB&I, LLC urged him to go on short-term disability, which he did. On July 12, 2018, Young had knee replacement surgery. Young switched to long-term disability in October 2018.

At trial, Young argued that the accident aggravated a pre-existing knee condition, making it a compensable workplace accident under the workers' compensation statute. Defendant CB&I, LLC and its workers' compensation insurer, XL Specialty Insurance Company, contended that Young's total knee replacement and any disability resulting therefrom were not causally related to the December 14, 2017 workplace accident; therefore, they argued that no workers' compensation benefits were owed after April 12, 2018.

The trial court ruled in favor of Claimant Young, finding:

1. [Young] suffered a compensable work-related injury/aggravation to his right knee on December 14, 2017, while in the course and scope of employment with [CB&I, LLC].

2. [Young] is entitled to an award of indemnity benefits, as follows: based on [Young's] zero-rate earning capacity, Supplemental Earnings Benefits (SEB), paid on a monthly basis at $2,829.67 a month or $653.00 a week from April 22, 2018[,] until July 12, 2018, the date of his right knee surgery; and Temporary Total Disability Benefits (TTD) after July 12, 2017, at $653.00 a week.

3. [Young] is entitled to reasonable and necessary medical benefits resulting from the compensable work-related injury/aggravation to his right knee on December 14, 2017.

4. Defendants are not entitled to any credit for the short and long term disability benefits paid to [Young] since April 12, 2018, since [Young] paid all the premiums for the short and long term disability policies.

5. This claim was not reasonably controverted, entitled [Young] to an award of $2,000.00 for the failure to initiate indemnity benefits and an award of attorney fees in the amount of $14,000.00.

6. [Young] is entitled to reimbursement of litigation expenses in the amount of $730.45.

7. Defendants are to pay all costs of these proceeds [sic] and the appropriate judicial/legal interests on the amount of Judgment owed to [Young].

8. This Judgment is designated as a final appealable judgment under La. C.C.P. art. 1915(B), and there is no just reason for delay of an appeal hereof.

Defendants CB&I, LLC and its workers' compensation insurer XL Specialty Insurance Company appealed the judgment. William Young answered the appeal, requesting an award of additional attorney's fees for work done on appeal.

## ASSIGNMENTS OF ERROR

1. The Workers' Compensation Judge committed manifest error that [Young] aggravated pre-existing right knee arthritis in an on-the-job accident on December 14, 2017.

2. The Workers' Compensation Judge committed error that [Young] is entitled to Supplemental Earnings Benefit (SEB) at $2,829.67

2

monthly from April 22, 2019 to July 12, 2018, which is the date [Young] has the total knee replacement surgery.

3. The Workers' Compensation Judge committed manifest error that [Young] is entitled to Temporary Total Disability Benefits (TTD) at $653.00 per week, beginning on July 13, 2019, while [Young] recovers from surgery.

4. The Workers' Compensation Judge committed manifest error that [Young] is entitled to medical benefits for the aggravation of the right knee injury.

5. The Workers' Compensation Judge committed manifest error that [Young] did not controvert the claim entitling [Young] to a $2,000.00 penalty and attorney Mark Zimmerman[] to $14,000.00 in attorney fees.

6. The Workers' Compensation Judge committed manifest error that [Young] is entitled to reimbursement of all litigation expenses.

7. The Workers' Compensation Judge committed manifest error that [Young] is entitled to judicial interest on past due indemnity benefits.

## LAW AND DISCUSSION

### I.  *Standard of Review*

The manifest error standard of review is the correct standard to be applied by the appellate court in workers' compensation cases. *Dean v. Southmark Construction*, 03-1051 (La 7/6/04), 879 112. Thus, the WCJ's findings will not be set aside absent a showing that they are clearly wrong. *Alexander v. Pellerin Marble & Grantite*, 93-1698 (La 1/14/94), 630 So.2d 706. "The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Blake v. Turner Industries Group, LLC*, 12-140, p. 6 (La.App. 1 Cir. 9/21/12), 111 So.3d 21, 25.

## II. Aggravation of Pre-Existing Condition

A workers' compensation claimant is provided coverage under La.R.S. 23:1031(A) if "he receives personal injury by accident arising out of and in the course of his employment." "He must establish that the accident was work-related, that the accident caused the injury, and that the injury caused the disability." *Lenox v. Central Louisiana Spokes, LLC*, 18-556, pp. 4-5 (La.App. 3 Cir. 2/13/19), 265 So.3d 834, 838. "[T]he plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence." *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357, 361 (La.1992). "Next, he must establish a causal connection between the accident and the resulting disability by a preponderance of the evidence." *Lenox* at 838.

> Even if the employee suffered from a pre-existing medical condition, he may still meet his burden of proof of causation if he proves that the reported accident aggravated, accelerated, or combined with the pre-existing condition to produce a compensable disability. *Peveto v. WHC Contractors*, 93-1402 (La. 1/14/94), 630 So.2d 689, 691. He may be aided in meeting the foregoing burden by a presumption of causation, if he can prove that before the accident he had not manifested disabling symptoms, that such symptoms commenced with the accident and manifested themselves thereafter, and that either medical or circumstantial evidence indicates a reasonable possibility of causal connection between the accident and onset of the disabling symptoms. *Walton v. Normandy Village Homes Ass'n, Inc.*, 475 So.2d 320, 324-25 (La.1985).

*Id*. at 838-39.

"It is well-settled that the workers' compensation laws of this state should be liberally interpreted in favor of the worker." *Espree v. Vanoil Completion Systems*, 28-932, p. 3 (La.App. 3 Cir. 6/5/19), 273 So.3d 1214, 1216.

It is undisputed that Mr. Young had pre-existing arthritis in his right knee prior to the accident. According to Dr. Geoffrey Collins, an orthopedic surgeon whom Mr. Young saw after the accident, Mr. Young described a seven-year

history of progressing arthritic symptoms in his right knee for which he had been taking Norco 10-325 milligrams on a daily basis to manage the pain. The Defendants argue that the workplace accident that occurred on December 14, 2021, merely exacerbated Mr. Young's arthritic condition rather than aggravating it. Explaining the difference, Defendants contend that an exacerbation of the condition is temporary and "returns to its prior level within a reasonable period of time," while an aggravation is permanent.

It is Defendants' position that Mr. Young did not meet his burden of proof at trial. First, Defendants argue that Mr. Young's knee arthritis was symptomatic and disabling. Five weeks prior to the workplace accident, Mr. Young saw Dr. Foret, an orthopedic surgeon, for pain, aching, and popping symptoms in his knee. Mr. Young was diagnosed with osteoarthritis in his right knee, which Dr. Foret treated with an injection and medication for pain management.

Next, Defendants contend that Mr. Young did not prove that the accident caused a change to his underlying condition that caused a greater disability. Based on the evidence, there was no objective, structural change to Mr. Young's right knee, according to Defendants. Finally, Defendants argue that no causal connection between the accident and the disabling condition has been proven.

Defendants point to Dr. Collins' medical records from April 9, 2018, when he examined Mr. Young. Dr. Collins states in his notes from that day, "I do not think that [Mr. Young's] current level of symptoms are associated with his knee sprain sustained at work but are the result of long-standing osteoarthritis." This opinion differs from Dr. Collins' opinion in the medical notes from Mr. Young's February 23, 2018 examination. On that date, Dr. Collins determined, "There is no doubt that the patient has had an aggravation [of a] pre-existing condition that is

5

making it difficult for him to work. The WCJ relied heavily on the deposition testimony of Dr. Collins, specifically the following colloquy:

Q. And just to - - and I think your opinion, from the first day you saw him until you released him or didn't see him against after April, did not change:

A. Pretty much, it did not.

Q. All right. And as far as his symptoms were concerned, except with a little bit of less swelling, they did not change?

A. That's correct.

Q. So again, if the client is credible - - and listen, I got it, I understand completely. [Young] had significant pre-existing arthritis in his knee. But it is - - if it is credible - - if the event happened as he described, he felt the onset of pain quickly and didn't do any of that work anymore since the December 17, 2017 incident, that that could be a viable explanation of an aggravation or an exasperation of a severe or significant pre-existing arthritis in his knee?

A. I believe it could.

Q. And that could require the knee for knee replacement?

A. Yeah. For lack of a better term, it could be what threw him over the top to, you know, not respond to the conservative treatments that he had been getting before.

Dr. Thomas Ford performed an independent medical examination of Mr. Young, and he was asked to address several questions. Dr. Ford was asked:

Q. It's understood that a doctor can't answer a causation question with absolute certainty. But, again, assuming Mr. Young is credible as to his increased symptoms, and there's no other accidents, etc., following the right knee incident of December 14, 2017, would you agree or opine that it's a reasonable likelihood or more likely than not the accident of December 14, 2017[,] aggravated Mr. Young's pre[-]existing right knee?

A. I agree that the accident aggravated a pre-existing condition.

Dr. Ford also opined that he did not believe Mr. Young would have needed a total knee replacement prior to the workplace accident based on his medical history.

6

Further, he agreed with Dr. Collins that the total knee replacement was necessary, assuming Mr. Young's symptoms did not improve post-accident.

The WCJ found:

> The medical alone establishes there was [a] failed attempt to bring claimant back to his baseline condition prior to the accident of December 14, 2107. Failed conservative treatment, failed physical therapy. Quite frankly, the only thing that would get him there would be a knee replacement.
>
> Buttress this with the testimony of the claimant, William Young, after observing him in court; I find him to be credible, never deviating how the accident occurred, his pre-existing conditions and his pain, and what he took for relief, I find that the accident of December 14, 2017, aggravated his pre-existing condition.

Based on the evidence in the record, we do not find that the WCJ was clearly wrong in finding that the workplace accident aggravated Mr. Young's right knee arthritis. This assignment of error has no merit.

### III. SEBs and TTDs

The WCJ found that Mr. Young was entitled to SEBs paid on a monthly basis of $2,829.67 per month or $654 per week from April 22, 2018, to July 12, 2018, which was the date of the right knee surgery. The WCJ also found that Mr. Young was entitled to TTDs after July 12, 2018, in the amount of $653.00 per week.

Defendants first argue that Mr. Young is not entitled to indemnity benefits because his disability is due to his pre-existing condition, rather than the workplace accident. We have already determined that the accident aggravated Mr. Young's pre-existing condition and is, therefore, compensable. This argument is moot.

Next, Defendants argue that modified work was available to Mr. Young if he had not resigned. Mr. Young testified that, in this modified position, he was forced to do things that his knee could not handle. He was required to walk to and from

7

different work sites, sweep and he was not allowed to sit for more than a few minutes at a time. Mr. Young described to Dr. Collins that he felt unsafe at work. For these reasons, Mr. Young quit his job. Mr. Young contends that no suitable modified employment was available to him while he was employed. He further contends that there has been no effort to provide any modified duty following his surgery.

Defendants also argue that Mr. Young had returned to his baseline condition from before the accident, relying on notes from Dr. Collins' April 9, 2018 evaluation. As stated previously, the notes deviate from previous notes and Dr. Collins' deposition testimony. Additionally, prior to the accident, Mr. Young was not in need of a total knee replacement. Post-accident, Dr. Ford and Dr. Collins both agreed that Mr. Young needed a total right knee replacement. Obviously, Mr. Young had not returned to his pre-accident baseline condition.

In its written reasons, the WCJ stated:

[CB&I, LLC] provided modified work duty to [Mr. Young] until April 12, 2018, when he resigned due to what he felt was a change in his work status and he could no longer perform the job that they were now having him to do. Keep in mind, he never returned to his job as an electrician [after the accident] which he was hired for on February 2nd, 2017.

[Mr. Young] was employed with CB&I as an electrician with an average weekly wage of $1584 and a corresponding weekly indemnity benefit of $653. [Mr. Young] has received no indemnity benefits since his last day of work which was April 12, 2018. [Mr. Young] has been on short-term and long-term disability since that time for he paid 100 percent of the premium policy.

The WCJ clearly found Mr. Young's testimony credible and found in his favor. This court in *Evans v. Winn Lumber Company, LLC*, 20-28, p. 2 (La.App. 3 Cir. 10/28/20), 306 So.3d 525, 527, explained:

8

The purpose of SEBs is to compensate an injured employee for the wage-earning capacity lost as a result of a work-related accident." *Lacaze v. Alliance Compressors*, 03-1566, p. 4 (La.App. 3 Cir. 4/14/04), 870 So.2d 1150, 1154 (citing *City of Jennings v. Dequeant*, 96-943 (La.App. 3 Cir. 11/5/97), 704 So.2d 264, *writ denied*, 98-610 (La. 4/24/98), 717 So.2d 1174). Initially, "[t]he injured employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his or her inability to earn [90% or more of the average pre-injury wage] under the facts and circumstances of the individual case." *Freeman v. Poulan/Weed Eater*, 93-1530 (La. 1/14/94), 630 So.2d 733, 739. On review, an appellate court must not re-weigh evidence or to substitute its own factual findings just because it may have decided a case differently. *Bonin v. Ferrellgas, Inc.*, 03-3024 (La. 7/2/04), 877 So.2d 89.

"In order for a claimant in a workers' compensation case to receive benefits for temporary total disability, he must prove by clear and convincing evidence that he is physically unable to engage in any employment or self-employment due to his injury." *Broussard v. Lafayette Parish School Bd.*, 05-575, p. 6 (La.App. 3 Cir. 4/5/06), 926 So.2d 713, 718.

The record is clear that Mr. Young was disabled and in need of a total right knee replacement. The WCJ found that even the modified work restrictions were too much for Mr. Young's right knee. We find that the WCJ did not err in awarding indemnity benefits to Mr. Young.

IV. *Medical Benefits*

Defendants argue that the WCJ erred in determining Mr. Young was entitled to medical benefits as a result of the aggravation to his right knee. Based on our previous findings in this matter, we find this assignment is without merit.

V. *Penalties, Attorney's Fees, Judicial Interest and Costs*

The WCJ found that CB&I, LLC did not controvert Mr. Young's claim, entitling Mr. Young to $2,000.00 for failure to reinstate benefits and $14,000.00 in

9

attorney's fees. Mr. Young was also awarded reimbursement of litigation expenses, and CB&I, LLC was tasked with the costs plus judicial interest of this case.

This court in *Martin v. Doerle Food Services, LLC*, 21-94, p. 2 (La.App. 3 Cir. 6/2/21), 321 So.3d 475, 476, set forth the law regarding penalties and attorney's fees in a workers' compensation claim thus:

> A claimant is entitled to an award of statutory penalties and attorney fees if the employer discontinues benefits and "such discontinuance is found to be arbitrary, capricious, or without probable cause[.]" La.R.S. 23:1201(I). The Louisiana Supreme Court has explained that "[a]rbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation." *Brown v. Texas-LA Cartage, Inc.*, 98-1063, pp. 8-9 (La. 12/1/98), 721 So.2d 885, 890.

> "In determining whether an employer's actions are arbitrary and capricious, the crucial inquiry is whether the employer can articulate an objective reason for terminating benefits at the time of the termination." *Doyal v. Vernon Par. Sch. Bd.*, 06-1088, p. 10 (La.App. 3 Cir. 2/7/07), 950 So.2d 902, 909, *writ denied*, 07-832 (La. 6/15/07), 958 So.2d 1190. "Since the determination of whether an employer was arbitrary and capricious is essentially a question of fact, it is subject to the manifest error or clearly wrong standard of review." *Id.*

In *Brown v. Shop Rite, Inc.*, 11-727 (La.App. 3 Cir. 11/2/11), 75 So.3d 1002, *writ denied*, 11-2647 (La. 2/10/12), 80 So.3d 480, the court was faced with inconsistencies in the treating physician's reports. The treating physician determined that Brown most likely had a lateral meniscus tear after reviewing the MRI and opined that her injury would become permanent without surgery. The doctor reported that Brown was totally incapacitated and there was no recommendation that she return to work. One month later, without seeing Brown, the treating physician returned a fax to the adjuster indicating Brown could return to full duty work status without restrictions. Shop Rite discontinued Brown's benefits based on this report. This court found "that Shop Rite arbitrarily chose

10

portions to support its discontinuation of benefits rather than investigate the inconsistencies or 'ask for clarification.'"

Similarly, in the present case, CB&I, LLC discontinued Mr. Young's benefits on April 9, 2018, after Dr. Collins determined that Mr. Young's symptoms were the result of his osteoarthritis, rather than the workplace accident. However, only one and a half months earlier, Dr. Collins stated in his February 23, 2018 medical report of Mr. Young that there was no doubt Mr. Young suffered from an aggravation of a pre-existing condition. Dr. Collins further stated in the same report that "in order for [Young] to be significantly improved he will probably require a knee replacement."

Based on the foregoing, we cannot say that the WCJ manifestly erred in awarding penalties and attorney's fees to Mr. Young. There were inconsistencies in Dr. Collins' reports, and CB&I, LLC did not investigate those inconsistencies or ask for clarification. As such, this assignment of error is without merit.

## CONCLUSION

The judgment of the Workers' Compensation Judge is affirmed. Costs of this appeal are assessed against Defendants CB&I, LLC and XL Specialty Insurance Company. William Young is awarded $5,000.00 in attorney's fees for work done on appeal.

**AFFIRMED.**

11